1   CHRISTOPHER W. KATZENBACH
    (SBN 108006)
2   Email: ckatzenbach@kkcounsel.com
    CONOR D. MACK (SBN 253878)
3   Email: cmack@kkcounsel.com
    KATZENBACH LAW OFFICES
4   1714 STOCKTON STREET,
    SUITE 300
5   SAN FRANCISCO, CA 94133-2930
    Telephone: (415) 834-1778
6   Fax: (415) 834-1842

7   Attorneys for Plaintiffs JONATHAN
    DAVIS, PHILIP EVANS AND MINDY
8   BALL, on behalf of themselves and all
    others similarly situated

9

10             UNITED STATES DISTRICT COURT

11            CENTRAL DISTRICT OF CALIFORNIA

12   JONATHAN DAVIS, PHILIP EVANS   )  Case No.   **960 DOC (AN x)**
    AND MINDY BALL,  on behalf of
13   themselves and all others similarly     )  COMPLAINT FOR DAMAGES AND
    situated,          )  EQUITABLE RELIEF FOR:
14

15           Plaintiffs,     )  1. BREACH OF DUTY OF FAIR
       vs.          )  REPRESENTATION AND BREACH
16                 )  OF COLLECTIVE BARGAINING
    PROFESSIONAL MUSICIANS       )  AGREEMENT;
17   LOCAL 47; AMERICAN
    FEDERATION OF MUSICIANS OF    )  2. VIOLATION OF SECTION
18   THE UNITED STATES AND      )  101(a)(1) OF THE LABOR
    CANADA; and PERFORMING ARTS   )  MANAGEMENT REPORTING AND
19   CENTER OF LOS ANGELES      )  DISCLOSURE ACT ("LMRDA");
    COUNTY,
20                )  3. VIOLATION OF SECTION
         Defendants.    )  101(a)(2) OF THE LMRDA;
21                )
                )  4. VIOLATION OF SECTION
22                )  101(a)(4) OF THE LMRDA;
                )
23                )  5. VIOLATION OF LOCAL AND
                )  INTERNATIONAL UNION
24                )  BYLAWS; AND
                )
25                )  6. VIOLATION OF
                )  INTERNATIONAL UNION
26                )  BYLAWS.
                )
27                )  **CLASS ACTION**
                )  **JURY TRIAL DEMANDED**
28

                   1

     COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

## JURISDICTION AND VENUE

1.   **JURISDICTION.**   This case seeks relief for breach of the duty of fair representation, breach of collective bargaining agreement, violations of Title I of the Labor Management Reporting and Disclosure Act ("LMRDA") and breach of contracts (labor union bylaws) between labor organizations and between labor organizations and union members.  This Court has jurisdiction of these claims under section 301(a) of the Labor Management Relations Act of 1947 (29 U.S.C § 185(a)), providing for jurisdiction over claims arising from violations of collective bargaining agreements and contracts between labor organizations, under sections 1331 and 1337 of the Judicial Code (28 U.S.C. §§ 1331, 1337) as this case arises under federal laws regulating interstate commerce, and under section 102 of the LMRDA (29 U.S.C. § 412).  The claims asserted herein arising under state law arise from the same facts and circumstances as the claims arising under federal law, form part of a single case or controversy within the meaning of Article III of the Constitution of the United States and are within this Court's Supplemental Jurisdiction under 28 U.S.C. § 1367.

2.   **VENUE.**   Venue is appropriate in this Court under 28 U.S.C. § 1391(b) and 29 U.S.C. § 412 as some or all of the acts or events giving rise to the claim occurred within this judicial district and some or all of the defendants reside within this judicial district.  Venue is also appropriate under 29 U.S.C. §§ 185(c) and 412 as the defendant PROFESSIONAL MUSICIANS LOCAL 47 (herein "Local 47") has its principal office in this judicial district and is engaged in representing members within this judicial district.

## PARTIES

3.   Defendant PROFESSIONAL MUSICIANS LOCAL 47  (herein "Local 47") is a local labor organization representing employees in an industry affecting commerce within the meaning of sections 301(a) and sections 2(3), (5), (6) and (7) of the Labor Management Relations Act, as amended ("LMRA") (29

U.S.C. 152(3), (5), (6), (7), 185(a)) and section 3(i) and (j) of the Labor Management Reporting and Disclosure Act of 1959 ("LMRDA") (29 U.S.C. § 402(i), (j)).   Local 47 is a local union chartered by and subordinate to the American Federation of Musicians of the United States and Canada.  Local 47 is subject to certain Bylaws that govern its relationship with its members and with the American Federation of Musicians of the United States and Canada.  Local 47's Bylaws is a contract with its members and is also a contract between labor organizations within the meaning of Section 301(a) of the LMRA.  The president of Local 47, its officers and its executive board are all members of Local 47.

4.      Defendant AMERICAN FEDERATION OF MUSICIANS OF THE UNITED STATES AND CANADA (herein "AFM") is an international labor organization representing employees in an industry affecting commerce within the meaning of sections 301(a) and sections 2(3), (5), (6) and (7) of the Labor Management Relations Act, as amended ("LMRA") (29 U.S.C. 152(3), (5), (6), (7), 185(a)) and section 3(i) and (j) of the Labor Management Reporting and Disclosure Act of 1959 ("LMRDA") (29 U.S.C. § 402(i), (j)).  The AFM has Bylaws that govern its relationship with its members and with subordinate local unions chartered by the AFM, including Local 47.  The AFM's Bylaws is a contract with its members and a contract between labor organizations within the meaning of Section 301(a) of the LMRA.

5.      Defendant PERFORMING ARTS CENTER OF LOS ANGELES COUNTY (herein "Music Center Dance" or "PACLAC") is a non-profit corporation organized under the laws of the State of California and an employer of employees in an industry affecting commerce within the meaning of sections 301(a) and 2(2), (3), (6) and (7) of the Labor Management Relations Act, as amended ("LMRA") (29 U.S.C. 152(2), (3), (6), (7) and 185(a)).  Through December 31, 2011, Music Center Dance was a signatory to a written collective bargaining agreement with Local 47.

3

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

6.    Plaintiffs JONATHAN DAVIS, PHILIP EVANS AND MINDY BALL are, and have been at all material times, members in good standing of defendant Local 47 and of defendant AFM.   Plaintiffs are musicians and members of a collective bargaining unit consisting of musicians employed by Music Center Dance for ballet productions (herein the "Ballet Orchestra").  For in excess of twenty (20) years, the Ballet Orchestra has been composed of musicians engaged on a consistent and continuing basis for dance and ballet productions presented by Music Center Dance.  Plaintiffs bring this action on behalf of themselves and on behalf of the members of the Class described and alleged more fully below.

7.    Plaintiffs' employment was governed, in part, by a written collective bargaining agreement between Local 47 and Music Center Dance (herein the "CBA").  The CBA covers a bargaining unit of all musicians employed by Music Center Dance who perform at the Ahmanson Theatre or the Dorothy Chandler Pavilion for ballet productions produced by Music Center Dance.  At all material times, plaintiffs were employees of Music Center Dance for purposes of the collective bargaining unit covered by the CBA.   A copy of the foregoing CBA is attached hereto as Exhibit 1.  The CBA was for the period January 1, 2009 through December 31, 2011.  Local 47 and Music Center Dance are in process of negotiating a successor agreement.  Under the past practices of Local 47, the provisions of an expired agreement continue in effect until a new collective bargaining agreement is agreed-upon and ratified.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

# ALLEGATIONS COMMON TO ALL CLAIMS AND ALL MEMBERS OF THE CLASS

### A.   <u>Material Terms Of The Music Center Dance CBA.</u>

8.   Article I, section A, of the CBA between Music Center Dance and Local 47 provides: "Parties:  The PERFORMING ARTS CENTER OF LOS ANGELES COUNTY (Music Center Dance) hereinafter called the 'Employer,' and the PROFESSIONAL MUSICIANS, Local 47, American Federation of Musicians, hereinafter called the 'Local,' agree to the following terms and conditions, hereinafter called the 'Agreement.'"

9.   Article I, section C, of the CBA between Music Center Dance and Local 47 provides: "This Agreement shall apply in full to all services performed by musicians who are employed by Employer at the Ahmanson Theatre or the Dorothy Chandler Pavilion for ballet productions produced by Music Center Dance during the term of this Agreement."

10.   Article II, section H, of the CBA between Music Center Dance and Local 47 provides, in relevant part: "the Employer shall not discriminate against any Musician as to employment for any consideration not related to the employee's competence to perform the duties of a Musician. . . ."

11.   Article III, section A, of the CBA between Music Center Dance and Local 47 provides, in material part: "the Employer shall employ a minimum of Local 47 musicians (including a Contractor) for each production. . . ."   Under industry practice, when the employer needs an orchestra for a performance, the employer hires a bargaining unit member to act as the Contractor for the performance.  This Contractor is also an employee of the employer and may be a

5

1   performing musician.  The Contractor thereafter selects the other orchestra
2   members as required for the particular performance.
3        12.    Article IV, section H, of the CBA between Music Center Dance and
4   Local 47 provides for the wages and wage scale for the Contractor as follows:
5   "Contractor/Conductor:  The scale for the Contractor, and, when applicable, for a
6   local Conductor shall be double Base Scale."  The term Base Scale refers to the
7   wages to be paid musicians under the collective bargaining agreement and such
8   Base Scale is set out in Article IV, Section B of the collective bargaining
9   agreement.
10       13.    Article XI, section C, of the CBA between Music Center Dance and
11  Local 47 provides, in relevant part:  "At no time shall the Employer use or permit
12  the use of any music, recorded or programmed on any other media (i.e.: tape, CD,
13  DVD, Hard Disk, Removable Disk, etc.) for any performance, except with the
14  prior written consent of the Local."
15       14.    Article XII of the CBA between Music Center Dance and Local 47
16  provides for a grievance and arbitration process to resolve disputes arising out of
17  the collective bargaining agreement.  Article XII, Section B of the CBA between
18  Music Center Dance and Local 47 provides that a statement of the grievance must
19  be initiated within 30 days of the events on which the grievance is based or from
20  the date that the grievant first had, or reasonably should have had, knowledge of
21  the events on which the grievance is based.  Article XII, Section B of the CBA
22  between Music Center Dance and Local 47 further provides, in material part, that
23  "within 10 days after the filing of such statement, representatives of the Employer
24  and the Local shall meet and confer in an attempt to settle the Grievance.  If no
25  settlement is reached, either party may request that the Grievance be submitted to
26  arbitration by serving written notice to the other party within 10 days following the
27  date of the meeting."
28

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

15.   Article XIII, section A of the CBA between Music Center Dance and Local 47 provides: "Employer's Rights. The Employer shall at all times have complete supervision, direction and control over the services of musicians, and expressly reserves the right to control the manner, means and details of the performance of services by the musicians—as well as the ends to be accomplished."

16.   Article XIII, section B of the CBA between Music Center Dance and Local 47 provides: "Contractor's Authority. The Contractor shall be the sole agent of the Employer and shall be responsible for the hiring of musicians under this Agreement."

17.   Article XIII, section D of the CBA between Music Center Dance and Local 47 provides in material part:

"[I]f a service is cancelled and notification is given to musicians 30 days or more before the date of that service, no payment shall be due to the musicians hired. If less than 30 days' notification is given, the musicians hired shall receive pay for the cancelled service up to a maximum of two weeks' pay."

18.   Article XIII, section G of the CBA between Music Center Dance and Local 47 provides in material part:

"Orchestra Committee: An Orchestra Committee consisting of Musicians with recent work experience for the Employer may be designated by the Local and shall act with the Local's consent and direction to work with the Employer to resolve problems, discuss concerns and otherwise communicate issues and information between the Employer and the musicians of the orchestra."

7

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

19.     Article XIII, section K of the CBA between Music Center Dance and Local 47 provides in material part:  "Amendment:  The parties shall, by mutual agreement, have the right to amend this Agreement during its term if they both believe that an emergency or an unforeseen circumstance make such amendment essential or desirable."

**B.     <u>Material Terms Of The Bylaws Of Local 47</u>.**

20.     Article I, Section 2 of the Bylaws of Local 47 provides:

"**AFM Status:**  The Local shall be an affiliated local of the American Federation of Musicians, herein referred to as the 'Federation.'  The Bylaws of the Local shall be subject to and subordinate to the Bylaws of the Federation, and whenever conflict or discrepancy appears between the former and the latter, the latter shall prevail."

21.     Article II, Section 1 of the Bylaws of Local 47 provides:

"*General Purposes:* The purposes of the Local shall be: (1) To unite all professional musicians within the jurisdiction of the Local regardless of religion, race, creed, color, national origin, or sex for the better protection of their mutual interest; (2) To promote, encourage, and enforce good faith and fair dealing with and among its members; (3) To secure and provide improved wages, hours, working conditions and other economic advantages for its members; (4) To engage in activities of every nature which further the interests and advance the standing of the Local and its members; (5) To work with and encourage other labor organizations in organizing workers and in other activities that strengthen the labor movement and extend the collective bargaining process; (6) To promote the health and welfare of members and their families and to provide facilities for advancing their

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

cultural, educational, social, and recreational interests; (7) To support the objectives of the American Federation of Musicians as an affiliate thereof; (8) To advance the cause of democratic institutions and procedures and of civil rights and civil liberties; (9) To encourage all members of the Local to register, vote, and otherwise participate in political activities for their common interests; (10) To provide a death benefit of not less than $1,000.00 for each member in good standing."

22.     Article XIII, Section 1 of the Bylaws of Local 47 provides:

"*Right to Participation:* Every member shall have an equal right to receive notice of and to attend General Meetings, to participate in the deliberations and voting thereof, to nominate candidates for office, and to vote in elections. Every member shall have the right to assemble freely and discuss Local business with other members and to express any view, argument, or opinion, and shall have the right to initiate or to participate in legal actions in any court or administrative body even though the Local or its officers are named as defendants or respondents, provided that the member has first exhausted reasonable internal hearing procedures. Every member shall have the right to be a witness in any government proceedings and to petition or consult legislators."

23.     Article XIII, Section 2 of the Bylaws of Local 47 provides:

"*Right to Information:* Every member shall have the right to information concerning the rules, action, and other matters affecting the membership of the Local, and shall have the right to a copy of the annual Financial Report of the Local and to have reasonable access to any books, records, accounts, or other supporting documents connected with the

9

finances of the Local.  Every member shall have the right to a current copy of the Bylaws of the Local and of the Federation."

24.    Article XIII, Section 3 of the Bylaws of Local 47 provides:

"*Right to Minimum Prices and Conditions:* Every member shall have an equal right to pursue employment in the music profession.  The Local shall maintain minimum Wage Scales, Rules, and Regulations for all engagements in its jurisdiction not covered by a Local or Federation collective bargaining agreement.  No member shall perform, nor induce another member to perform, musical services which do not meet the minimum standards established by the Wage Scales, Rules, and Regulations or by an applicable collective bargaining agreement.  These minimum standards, however, shall in no way be construed as preventing members from seeking higher prices or better conditions."

25.    Article XIII, Section 5 of the Bylaws of Local 47 provides:

"*Right to Ratify Agreements:* All collective bargaining agreements negotiated or renegotiated by the Local shall be submitted to a secret ballot ratification vote by members who are part of the bargaining unit covered by the agreement.  The eligibility requirements and ratification voting procedure shall in each case be determined by the Executive Board.  In the event that the Executive Board determines that a list of eligible members cannot be reasonably established, this requirement shall not apply, and the Executive Board shall be empowered to ratify the agreement."

26.    Article XIII, Section 7 of the Bylaws of Local 47 provides:  "*Duty to Act in a Professional Manner:* All members shall have the duty to conduct themselves in a professional manner on all engagements and to observe the principles of good faith and fair dealing in all professional transactions."

10

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

## C.    Material Terms Of The Bylaws Of The AFM.

27.    Article 5, Section 1(a) of the Bylaws of the AFM provides:

"Locals shall be required to adopt as part of their Local Constitution and Bylaws a provision to the effect that the Local Constitution and Bylaws shall be subject and subordinate to the AFM Bylaws and amendments and providing further that wherever conflict or discrepancy appears between the Local Constitution and Bylaws and the AFM Bylaws and amendments, the latter shall prevail."

28.    Article 5, Section 1(b) of the Bylaws of the AFM provides, in material part: "The Bylaws of each Local must contain provisions permitting amendments to the Local's Constitution and/or Bylaws to be made at least annually in accordance with guidelines promulgated by the IEB."

29.    Article 5, Section 27(b) of the Bylaws of the AFM provides:

"A Local enters into CBAs for its members and for AFM members who perform within the Local jurisdiction.  Each Local member and each AFM member who performs within its jurisdiction is bound by the Local CBA's terms.  Similarly, the AFM licenses and enters into agreements with booking agents for the benefit of all AFM members and each member is bound by the terms of these agreements."

30.    Article 5, Section 32 of the Bylaws of the AFM provides:

"Locals shall submit any CBA to the AFM members who are affected by it for ratification by a majority vote of those AFM members in good standing determined to be eligible to ratify the agreement.  In the event of a ratification held by meeting and secret ballot, there shall be no proxy or

11

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

absentee ballots. If it is necessary to hold a ratification by mail, then all voting shall be by mail ballot. A majority of those eligible members who cast ballots shall be sufficient to ratify the agreement. In the event the Local and/or the AFM are unable to identify a bargaining unit for purposes of ratification, the International President or the Vice-President from Canada, as is appropriate, may empower the Local Executive Board to ratify the Agreement."

31.    Article 5, Section 33(a) of the Bylaws of the AFM provides:

"Any CBA negotiated or renegotiated by the AFM or a Local or any negotiated extension of an existing agreement for a period of more than six months beyond its expiration date shall be subject to a secret ballot ratification by the eligible members who have worked under the previous agreement. A majority of those eligible members who cast ballots shall be sufficient to ratify the agreement. The eligibility requirements and ratification voting procedure shall in each case be determined by the IEB, or the Local's Executive Board, as the case may be.

"In the event that a list of eligible members cannot be reasonably established, this requirement shall not apply, and the IEB or the Local's Executive Board, as the case may be, shall be empowered to ratify the agreement."

32.    Article 5, Section 33(c) of the Bylaws of the AFM provides:

"The AFM or Local, as the case may be, shall keep accurate and up-to-date lists of all musicians who are eligible to ratify the agreements as specified in Section 33(a) of this Article. Furthermore, if there is a dissenting opinion emanating from members of the negotiating committee, the dissenter(s) shall have the right to prepare a minority report at their own

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

expense and have it included as part of the ratification materials presented to those members eligible to vote on the contract."

33.    Article 5, Section 38(a) of the Bylaws of the AFM provides:

"In representing members of symphonic orchestras (as defined in Article 14) for purposes of collective bargaining with their employers, Locals shall provide, at no additional expense to the members involved other than their regularly imposed Initiation Fees, periodic dues, and Work Dues, at least the following services (1) competent representation in negotiations as the situation requires and the orchestra members may reasonably request; (2) continuing contract administration, including the handling of grievances and arbitration; (3) all reasonable and necessary out-of-pocket expenses (e.g., photocopy and telephone) incurred by the orchestra committee in assisting the Local in negotiations and contract administration; (4) the reasonable and necessary expenses of sending one Delegate to the appropriate annual Conference of ICSOM, OCSM/OMOSC, or ROPA, if applicable.  The Symphonic Services Division in the International President's office and the Canadian Office shall supervise the Local's responsibilities in this regard, including making determinations concerning the adequacy and suitability of representation furnished for negotiations, and shall render whatever assistance it deems necessary."

34.    Article 5, Section 38(b) of the Bylaws of the AFM provides, in material part:

"In the event that a Local does not or cannot provide the services set forth above in a satisfactory manner, or upon the request of the Local or the members of an orchestra for reasonable cause, the International President

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

(after consultation with the Local and the members involved) shall have the authority to take either of the following actions:

1.    Appoint a representative who shall act as a mediator and shall work to resolve any differences that may exist between the Local and its bargaining unit (the Orchestra Members); such representative, acting as mediator, shall so act at the direction of the International President, who shall consult with the International Executive Board, and the Local Officers on these issues.  Any costs shall be paid by the Federation out of the Symphonic Work Dues paid to the Federation by the Local."

35.    Article 5, Section 39 of the Bylaws of the AFM provides: "All Locals having symphonic orchestras as defined in Article 14, Section 1, shall recognize orchestra committees, elected by the orchestra, to serve as liaison between the orchestra players and the Local."

36.    (a) Article 14, Section 1 of the Bylaws of the AFM provides:
"The term 'Symphonic Orchestra' shall mean a non-profit symphony, opera, ballet, or chamber orchestra performing a varied repertoire during recurring annual seasons under a Local CBA with musicians who have personal service contracts or are otherwise engaged on a consistent and continuing basis."

(b)  The Bylaws of the AFM further define the term "Symphonic Orchestra" as: **"Symphonic Orchestra—A regularly organized nonprofit symphony, opera, ballet, or chamber orchestra having a Local CBA."**

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

37.   Article 14, Section 4(e) of the Bylaws of the AFM provides:

"However, in no case shall any Local agree to a collective bargaining provision that shall operate to permit an employer to displace live musicians by the use of taped or otherwise recorded music.

This section shall not be interpreted to prohibit or restrict the use of taped or recorded music when all musicians who have a personal service contract under a CBA are employed or when all musicians who are engaged on a consistent and continuous basis are employed, and the tape or recorded music is used only to provide music of indigenous or otherwise unavailable special purposes pieces or sound effects."

## D.   The Events Giving Rise To This Complaint.

38.   Plaintiffs are informed and believe, and thereon allege, that at some time prior to December 2011, Music Center Dance undertook a series of arrangements pursuant to which the Ballet Orchestra's bargaining unit work was transferred to the Los Angeles Opera Orchestra (herein the "Opera Orchestra") under a contract or subcontract with the Los Angeles Opera (the "Opera"). Under this arrangement, Music Center Dance hired the Opera as a purported "contractor" and the Opera thereupon hired the Opera Orchestra as the musicians for dance and ballet programs produced by Music Center Dance. At all material times, these dance and ballet programs were produced and presented by Music Center Dance and were neither produced nor presented by the Opera in any part. For purposes of this Complaint, the arrangement alleged in this paragraph is referred to as "subcontracting" or as a "subcontract."

39.   At all material times, the Opera was, and is, a corporation organized under the laws of the State of California and an entity and employer distinct and different from Music Center Dance. At all material times, the Opera and Local 47

15

1   were parties to a separate collective bargaining agreement for a bargaining unit for

2   musicians for productions produced or presented by the Opera.

3       40.    At all material times, including when performing for dance

4   productions, the members of the Opera Orchestra were employees of the Opera and

5   were not employees of Music Center Dance.

6       41.    Plaintiffs are informed and believe, and thereon allege, that prior to

7   December 2011, Local 47 was informed of the subcontracting of bargaining unit

8   work to the Opera and the Opera Orchestra and Local 47 agreed with the employer

9   to permit this subcontracting.  Local 47 and/or Music Center Dance did not advise

10  members of the Music Center Dance bargaining unit of this subcontracting but, in

11  fact, concealed this subcontracting from the members of the Music Center Dance

12  bargaining unit.  Plaintiffs are informed and believe, and thereon allege, that Local

13  47 and/or Music Center Dance informed members of the Opera Orchestra

14  bargaining unit, including the Chair of the Opera Orchestra Committee, of such

15  subcontracting.

16      42.    Prior to the events alleged herein, Local 47 failed to maintain records

17  as to the membership of the Music Center Dance bargaining unit.

18      43.    In about November 2011, Local 47 appointed five (5) members to an

19  Orchestra Committee for the Ballet Orchestra for purposes of negotiating a

20  successor collective bargaining agreement with Music Center Dance for the dance

21  productions covered by the CBA expiring on December 31, 2011.  Local 47

22  appointed three (3) members who had previously performed as employees of

23  Music Center Dance in dance productions under the CBA.  Local 47 also

24  appointed to this Orchestra Committee two (2) members of the Opera Orchestra

25  who were employed by the Opera (Nadine Hall and Greg Goodall).  The policy

26  and practice of Local 47 and other local unions with the AFM is that the orchestra

27  committee is the committee that participates, on behalf of the bargaining unit, in

28  collective bargaining negotiations as the bargaining unit's negotiating committee.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

For purposes of this Complaint, the committee established as alleged in this paragraph is referred to both as the "negotiating committee" and the "orchestra committee" for the Ballet Orchestra.  The appointments by Local 47 alleged in this paragraph were made without holding an election for the members of the committee.

44.     Plaintiffs are informed and believe, and thereon allege, that Goodall had never been employed by Music Center Dance or performed as a member of the Ballet Orchestra for dance productions produced or presented by Music Center Dance, that Hall had not been employed by Music Center Dance at any time during the term of the CBA with Music Center Dance effective January 1, 2009 through December 31, 2011, that neither Goodall or Hall was at the time of this appointment a member of the collective bargaining unit under the Music Center Dance CBA, that neither of them had work experience for Music Center Dance at any recent time or during the period of the CBA between Local 47 and Music Center Dance, and that either and/or both Goodall and Hall were ineligible under the terms of the Bylaws of Local 47, the Bylaws of the AFM and the terms of the CBA to serve on an orchestra committee for the Music Center Dance collective bargaining unit.  Plaintiffs are further informed and believe, and thereon allege, that (a) Goodall was, at the time of this appointment, the Chair of the orchestra committee for the Opera Orchestra, (b) at all material times Goodall actively sought and attempted to obtain the work of the Ballet Orchestra bargaining unit for the Opera Orchestra bargaining unit, to the detriment of the Ballet Orchestra members, including by opposing all contract proposals proposed by the Ballet Orchestra that would prevent subcontracting bargaining unit work to the Opera and Opera Orchestra and by lobbying Local 47 to allow the members of the Opera Orchestra to vote on any new collective bargaining agreement with Music Center Dance, and (c) both Local 47 and Music Center Dance were aware of Goodall's

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

status as Chair of the Opera Orchestra committee and his desire and efforts to obtain the work of the Ballet Orchestra for the Opera Orchestra.

45. Plaintiffs and the other members of the Ballet Orchestra first learned of the subcontracting arrangement between Music Center Dance and the Opera, and Local 47's approval of it, in or about January 2012. The information they learned arose in connection with an apparent subcontract between Music Center Dance and the Opera for the Joffrey Ballet's performance of the Nutcracker in December 2011. The Nutcracker is a performance that has traditionally been worked by members of the Ballet Orchestra. Plaintiffs are informed and believe, and thereon allege, however, that the Music Center Dance has also engaged in such subcontracting with the Opera for future dance performances, or intends to do so, and that it may have done so for other dance productions prior to the Nutcracker in December 2011.

46. On or about January 24, 2012, at a union meeting, members of the Music Center Dance bargaining unit stated their objection to the subcontracting of bargaining unit work to the Opera and Opera Orchestra and requested that Local 47 hold a vote of the bargaining unit members of the Music Center Dance collective bargaining agreement to elect the members of the orchestra committee who would be participating in negotiations for a successor collective bargaining agreement with Music Center Dance. Local 47 refused to conduct such an election. At this meeting, Local 47 President, Vincent Trombetta, stated in response to questions that the Opera "asked for the work and the Union gave it to them." Local 47 refused to respond to follow-up questions from members asking how this could have occurred, why there was no notice to the members of the bargaining unit or why Local 47 did not seek ratification by the bargaining unit of Local 47's agreement to give the work to the Opera and Opera Orchestra.

47. On or about January 24, 2012, the Local 47 Executive Board determined that the bargaining unit members who would have the right to vote on

18

ratification of any new collective bargaining agreement with Music Center Dance would consist of musicians who had been employed by Music Center Dance for any dance productions within the past six years, corresponding to the length of the two most-recent collective bargaining agreements with Music Center Dance. Plaintiffs are informed and believe, and thereon allege, that Local 47 defined the foregoing group entitled to ratify a new collective bargaining agreement for the purpose of including current members of the Opera Orchestra in the ratification group and maximizing the number of Opera Orchestra members who would be able to vote on ratification.

48.    After the Ballet Orchestra bargaining unit members learned of the subcontracting of unit work to the Opera and the Opera Orchestra, they asserted that this subcontracting violated the CBA, demanded that the employer cease this subcontracting with the Opera and demanded additional terms for the new Music Center Dance agreement that would guarantee Ballet Orchestra bargaining members this work in the future, such as "tenure" or "sole orchestra" provisions. Plaintiffs are informed and believe, and thereon allege, that all or substantially all other collective bargaining agreements negotiated by Local 47 contain "tenure" or "sole orchestra" provisions for the purpose of protecting bargaining unit work in the manner desired by the Ballet Orchestra.

49.    On or about January 29, 2012, twenty-seven (27) members of the Ballet Orchestra submitted a petition to Local 47 demanding that use of the Opera Orchestra for dance productions cease and that all work be performed by members of the Ballet Orchestra bargaining unit.

50.    On or about March 23, 2012, members of the Ballet Orchestra filed internal charges against the president of Local 47 alleging violations of the Local 47 Bylaws and the AFM Bylaws arising from the subcontracting of bargaining unit work to the Opera and related matters.  On or about April 4, 2012, Local 47

19

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

disclosed the contents of the internal charges, including the identity of the persons filing these charges, to members of the Opera Orchestra.

51.     On or about March 23, 2012, members of the Ballet Orchestra submitted to Local 47 a grievance against Music Center Dance for violating the CBA by subcontracting work to the Opera and Opera Orchestra.   Plaintiffs are informed and believe, and thereon allege, that Local 47 presented the grievance to Music Center Dance who rejected it as untimely.   Thereafter, Local 47 did not make a demand for arbitration of this dispute, including arbitration of Music Center Dance's claim that the grievance was untimely.

52.     Music Center Dance has refused to cease using the Opera and the Opera Orchestra to perform the bargaining unit work of the Ballet Orchestra and has asserted the right to continue to use the Opera and Opera Orchestra to perform bargaining unit work.   Among other things, Music Center Dance has asserted that the subcontracting practice of using the Opera will remain "status quo" for at least the next two or three years.

53.     Music Center Dance has asserted various and inconsistent justifications for subcontracting bargaining unit work to the Opera and Opera Orchestra.

(a)     When the Ballet Orchestra asked for tenure and sole orchestra provisions in the collective bargaining unit, Music Center Dance rejected these proposals and asserted that the subcontracting was justified by its desire to "brand" all dance and opera work as being performed by the Opera Orchestra.

(b)     On April 23, 2012, after members of the Ballet Orchestra informed Music Center Dance that members would be filing unfair labor practice charges, as alleged in paragraph 55 below, and immediately following a private meeting between representatives of Music Center Dance and Local 47 that excluded members of the Ballet Orchestra negotiating

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

committee, Music Center Dance stated that the reason for the subcontracting was not "branding" but instead was because Music Center Dance did not have a permanent dance company.  Local 47, without seeking any input from or discussion with the Ballet Orchestra or the Orchestra negotiating committee, stated that it "accepted" this explanation.

(1)   Plaintiffs are informed and believe, and thereon allege, that Music Center Dance has not had a permanent dance company at any time for over the past thirty (30) years, but has nevertheless used the members of the Ballet Orchestra as the regular orchestra for dance productions promoted or produced by Music Center Dance during that time.

54.   During the course of the negotiations prior to April 23, 2012, Music Center Dance did not propose new or additional contract terms that would permit subcontracting of bargaining unit work or permit Music Center Dance to use a non-Local 47 musician as a "contractor" for musicians for dance productions or to use an entity like the Opera as such a "contractor."  Prior to April 23, 2012, Music Center Dance did not propose new or additional contract terms that would permit it to discriminate against bargaining unit musicians on the basis of factors other than musical competence or to use the musicians in the Opera Orchestra for dance productions irrespective of musical competence.

55.   On April 23, 2012, prior to the collective bargaining session held on that date, Local 47 and Music Center Dance were informed that thirteen members of the Ballet Orchestra (including the three members of the negotiating committee from the Ballet Orchestra) would be filing unfair labor practice charges with the National Labor Relations Board ("NLRB") against Local 47 and Music Center Dance, alleging, inter alia, that the subcontracting of bargaining unit work to the Opera violated Sections 8(a)(1), 8(a)(3) and 8(a)(5) of the National Labor Relations Act ("NLRA") and that Local 47 had breached its duty of fair

21

representation in violation of Section 8(b)(1)(A) and 8(b)(2) of the NLRA. Local 47 and Music Center Dance were provided copies of the charges that were being filed. These charges were submitted to the NLRB on April 23, 2012 and on April 24, 2012, the NLRB formally filed the foregoing charges.

56. On April 23, 2012, after being told of the filing of charges with the NLRB, Local 47 proposed new contract terms that would expressly permit use of the Opera and Opera Orchestra for all ballet performances except for the end of the season American Ballet Theater. Local 47 did not seek the input or approval from members of the Ballet Orchestra bargaining unit or the Ballet Orchestra members on the negotiating committee prior to making such proposals, concealed such proposals from the Ballet Orchestra and the members of the Ballet Orchestra on the negotiating committee until Local 47 made the proposal to Music Center Dance in negotiations, refused to allow members of the Ballet Orchestra negotiating committee to participate in union caucuses and discussions during bargaining prior to making these proposals and refused to allow the negotiating committee members to vote on such proposals.

57. The proposals Local 47 submitted to Music Center Dance on April 23, 2012 were unreasonably harmful and detrimental to the interests of the members of the Ballet Orchestra and arbitrarily favored the members of the Opera Orchestra. In particular Local 47's proposals allowed the Opera Orchestra to perform at approximately ten or eleven of the twelve ballet performances that would be produced by Music Center Dance during the term of the new collective bargaining agreement and deprived the Ballet Orchestra of the dance and ballet orchestra work that it had historically performed and to which it was entitled under the terms of the CBA. Local 47's proposal was contrary to and in conflict with the prior contract proposals for tenure or sole orchestra that the Ballet Orchestra committee had presented to Local 47 for presentation to Music Center Dance.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

58.    After Local 47 proposed the contract terms alleged in paragraphs 56 and 57 hereof, Music Center Dance stated that it proposed using the "former" Ballet Orchestra employees for two ballet productions during the next two years under a side letter.  After Music Center Dance made this proposal, Local 47 requested to meet with Music Center Dance outside the presence of the Ballet Orchestra committee and Local 47 and Music Center Dance did so.  When Local 47 and Music Center Dance returned from this meeting, Local 47 stated its acceptance to Music Center Dance's proposal.  Local 47 stated such acceptance without discussion with, input from or any vote of the Ballet Orchestra negotiating committee.

59.    Immediately following the events alleged in paragraphs 56, 57 and 58 hereof, the president of Local 47 stated to members of the Ballet Orchestra committee that, since Local 47 had just negotiated a contract with the employer which resolved all the issues, Local 47 wanted the employees to drop the NLRB charges.

60.    From on or about February 15, 2012, members of the Music Center Dance bargaining unit requested that the AFM appoint a mediator to resolve the differences between Local 47 and the Music Center Dance bargaining unit pursuant to the provisions of Sections 38(a) and 38(b) of the AFM Bylaws.  In response, the AFM stated that it would not appoint such a mediator because Local 47 was the largest or second largest local in the country and it would look bad for Local 47 if the AFM did so.  The AFM further stated that any request for a mediator would have to come from Local 47 itself and that it would not honor any request coming only from the members of the bargaining unit.

61.    On or about April 17, 2012, after the Ballet Orchestra members had objected to the subcontracting of bargaining unit work, members of the Ballet Orchestra learned that Music Center Dance had used taped music for a dance production the previous weekend and that such use had not been given prior

23

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

1  approval by Local 47.  Thereafter, members of the Ballet Orchestra requested that
2  Local 47 file a grievance over the use of taped music as a violation of the terms
3  and conditions of the CBA.   Plaintiffs are informed and believe, and thereon
4  allege, that Local 47 did not file such a grievance or take any other action to
5  enforce the terms and conditions of employment the prohibited the use of taped
6  music.

## CLASS ACTION ALLEGATIONS

7
8        62.    This action is brought by the named Plaintiff as a class action, on their
9  own behalf and on behalf of all others similarly situated ("the Class"), under the
10 provisions of the Federal Rule of Civil Procedure, Rule 23.
11       63.    The Class is comprised of all members of the bargaining unit under
12 the CBA, excluding persons who are members of the Los Angeles Opera
13 Orchestra.   Plaintiffs estimate that this class is composed of over 80 persons.
14       64.    Joinder of all Class members in this action is impractical.
15       65.    Defendants' actions have affected the rights of each Class member in
16 a similar, or substantially similar, manner.  There are common questions of law
17 and fact with respect to Defendants and the actions taken by Defendants against
18 Class members. Among these questions common to the Class are whether:
19             (a)    Local 47 violated its duty of fair representation to the Class by
20       acting arbitrarily, discriminatorily and in bad faith towards the Class, by,
21       among other things, failing to represent the interest of the bargaining unit
22       and by consenting to and facilitating the transfer of bargaining unit work to
23       the Opera Orchestra, by failing to have an election of the orchestra
24       committee for the Ballet Orchestra, by failing to maintain a list of bargaining
25       unit members, by arbitrarily including members of the Opera Orchestra in
26       the bargaining unit and on the negotiating committee, by failing to advise the
27       Ballet Orchestra of Local 47's agreement to subcontracting of bargaining
28       unit work to the Opera and Opera Orchestra and by arbitrarily and in bad

24

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

faith favoring the interests of the members Opera Orchestra over the interests of the members of the Ballet Orchestra;

(b)     The AFM violated its duty of fair representation to the Class by acting arbitrarily, discriminatorily and in bad faith towards the Class, by not appointing a mediator to resolve differences between the bargaining unit and Local 47 because of Local 47's breach of duty and inability to represent the Ballet Orchestra fairly;

(c)     PACLAC violated the terms of the CBA applicable to the Class by discriminating against the Class on a basis other than musical competence (e.g., on the basis of membership in the Opera Orchestra), by using a non-musician (the Opera) as a contractor under the CBA, and by subcontracting bargaining unit work to the Opera;

(d)     Local 47 violated section 101(a)(1) of the Labor Management Reporting And Disclosure Act (herein "LMRDA");

(e)     Local 47 violated section 101(a)(2) of the LMRDA;

(f)     Local 47 violated section 101(a)(4) of the LMRDA;

(g)     Local 47 and/or the AFM violated the terms of their Bylaws.

66.     Class action treatment provides a fair and effectual method for the adjudication of the controversy.

(a)     A Class Action is an effective method whereby the enforcement of the rights of Plaintiffs and members of the Class can be fairly managed without unnecessary expense or duplication, avoiding inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class or adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

25

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

(b)     Local 47, the AFM and Music Center Dance have acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

(c)     Questions of law or fact common to Class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy and for Class members to obtain damages or other economic relief.

67.     Individual litigation would be unduly burdensome to the courts and inefficient for the Class.   The expense and burden of individual litigation in a case of this nature and the relatively small amount of damages suffered by each member make it impractical for individual Class members to seek redress in individual actions for the wrong done to them.

68.     The claims of Plaintiffs, as the Class representatives, are typical of the claims of the members of the Class, as all plaintiffs are musicians who are members of the Ballet Orchestra and who have been harmed by the actions alleged herein in substantially the same manner as other Class members.

69.     Plaintiffs will fairly and adequately protect the interests of the Class they represent. The Class representatives' interests are consistent with and not antagonistic to members of the Class.

## FIRST CLAIM FOR RELIEF

### (Breach of Duty of Fair Representation/Breach of Collective Bargaining Agreement [All Defendants])

70.     Plaintiffs incorporate the allegations in paragraphs 1 through 61 hereof as if fully set forth in this Claim for Relief.

26

71.   By the acts alleged herein, Music Center Dance has breached, and threatens to breach in the future, the provisions of the collective bargaining agreement and the terms and conditions of employment alleged in paragraphs 8 through 19 hereof, including, but not limited to: (a) subcontracting Music Center Dance bargaining unit work to the Opera and Opera Orchestra; (b) using the Opera as a contractor for musicians; (c) employing musicians that were employees of the Opera rather than musicians who are members of the Ballet Orchestra and the Music Center Dance bargaining unit for dance productions produced by Music Center Dance; (d) discriminating against the members of the Ballet Orchestra and Music Center Dance bargaining unit, in favor of the members of the Opera Orchestra, for reasons other than musical competence; and (e) using recorded music rather than live performances by the Ballet Orchestra.  By reason of such breach of the collective bargaining agreement, plaintiffs have lost, and continue to lose, wages and benefits arising from employment with Music Center Dance as musicians for dance productions produced by Music Center Dance.

72.   At all material times Local 47 has acted arbitrarily, discriminatorily and in bad faith towards plaintiffs and other members of the Music Center Dance bargaining unit.  Local 47's arbitrary, discriminatory and bad faith actions include, but are not limited to:  (a) allowing and agreeing to the subcontracting of bargaining unit work to the Opera and Opera Orchestra; (b) conducting negotiations with Music Center Dance regarding the new collective bargaining agreement, including proposing contact terms, in a manner that was detrimental to the interests of the Music Center Dance  bargaining unit, was inconsistent with the reasonable requests of the members of the Ballet Orchestra and arbitrarily favored the interests of the members of the Opera Orchestra who were not members of the Music Center Dance bargaining unit; (c) concealing from and failing to advise members of the Music Center Dance bargaining unit of Local 47's actions and its agreement to subcontracting bargaining unit work, in violation of the rights of

27

members under Article XIII, Section 2 of Local 47's Bylaws to information as to Local 47 actions affecting them; (d) failing to seek ratification of its agreement to allow the Opera to act as a contractor under the CBA, as such agreement constituted a renegotiated collective bargaining agreement that required ratification pursuant to Article XIII, Section 5 of Local 47's Bylaws and Article 5, Section 33(a) of AFM's Bylaws; (e) excluding members of the Music Center Dance bargaining unit Orchestra committee from negotiations with the employer; (f) failing to obtain input, discussion or consent of the Orchestra committee to contract proposals made by Local 47 before proposing them to Music Center Dance or as to counter-proposals by Music Center Dance before agreeing to them; (g) excluding members of the Orchestra committee from collective bargaining meetings with Music Center Dance; (h) refusing to conduct an election for members of the Ballet Orchestra negotiating committee, as required by Article 5, Section 39 of the AFM Bylaws and appointing persons to the Orchestra committee for the Ballet Orchestra who had a conflict of interest with and actively opposed the bargaining unit's interests and desires, who were not members of the Ballet Orchestra bargaining unit and who were not eligible to serve on the Ballet Orchestra committee under Article 5, Section 39 of the AFM Bylaws and Article XIII, Section G of the Music Center Dance CBA; (i) failing to maintain records of the members of the Ballet Orchestra bargaining unit and defining the group entitled to ratify a new collective bargaining agreement in an arbitrary manner, to include members of the Opera Orchestra who had not worked under the previous agreement, contrary to the provisions of Article 5, Sections 33(a) and 33(c) of AFM's Bylaws, for the purpose of including additional members of the Opera Orchestra in the group voting on ratification; (j) failing to seek arbitration of the grievance filed by the Ballet Orchestra members over the subcontracting after the grievance did not settle; and (k) failing to file a grievance or take other action over the use of taped music by Music Center Dance.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

73.   At all material times the AFM has acted arbitrarily, discriminatorily and in bad faith towards plaintiffs and other members of the Music Center Dance bargaining unit, including, but not limited to, by refusing to appoint a mediator to resolve disputes between Local 47 and the Ballet Orchestra for reasons that are arbitrary, discriminatory and in bad faith, and for reasons that are contrary to the standards for appointment of such a mediator stated in Article 5, Section 38(b) of the AFM Bylaws.

74.   By reason of the foregoing acts, Local 47 and the AFM have breached their duty of fair representation towards plaintiffs.

75.   At all material times, including the time when it agreed to the new contract proposals allowing the use of the Opera and the Opera Orchestra, Music Center Dance was aware of that Local 47 was acting arbitrarily, discriminatorily and in bad faith towards the members of the Ballet Orchestra bargaining unit and participated in and sought to take advantage of Local 47's arbitrary, discriminatory and bad faith actions.

76.   Because of the breach of duty of fair representation and because of the breach of contract alleged herein, plaintiffs have suffered damages and will suffer future damages, including lost wages and benefits, emotional distress, suffering and anxiety arising from loss of work, and have accrued and continue to accrue the costs of attorneys' fees incurred in establishing the breaches of duty by Local 47 and the AMF and the violations of the collective bargaining agreement by Music Center Dance.

77.   Plaintiffs assert, and defendants dispute, whether Music Center Dance violated the CBA and whether Local 47 and the AFM violated the duty of fair representation alleged herein.  By reason of this dispute, the rights and duties of plaintiffs and other members of the Ballet Orchestra, on the one hand, and defendants, on the other hand, are disputed and, without a judicial declaration of

29

1  rights, the parties will be uncertain as to their respective rights and liabilities in the
2  future in the conduct of their mutual relationships.

3      78.   Monetary damages cannot fully compensate plaintiffs for the losses
4  alleged herein and therefore, in addition to money damages, plaintiffs request
5  equitable and injunctive relief: (a) setting aside any new contract with Music
6  Center Dance which was negotiated by Local 47 and directing Local 47 and/or the
7  AFM to appoint new negotiators who are not hostile to or have a conflict of
8  interest with the members of the Ballet Orchestra bargaining unit, directing AFM
9  to appoint a mediator pursuant to Article 5, Section 38(b) of the AFM Bylaws and
10  directing Local 47 to conduct elections for a new negotiating committee; and (b)
11  declaring the rights and duties of the parties under the law alleged herein.

12

13  **SECOND CLAIM FOR RELIEF**
14  **(Violations of LMRDA section 101(a)(1) [Against Local 47])**

15      79.   Plaintiffs incorporate the allegations in paragraphs 1 through 61
16  hereof as if fully set forth in this Claim for Relief.

17      80.   Title I, Section 101(a)(1) of the LMRDA (29 U.S.C. § 411(a)(1))
18  provides, in material part, that: "Every member of a labor organization shall have
19  equal rights and privileges within such organization to nominate candidates, to
20  vote in elections or referendums of the labor organization, to attend membership
21  meetings, and to participate in the deliberations and voting upon the business of
22  such meetings, subject to reasonable rules and regulations in such organization's
23  constitution and bylaws."

24      81.   Title I, Section 102 of the LMRDA (29 U.S.C. § 412) provides, in
25  material part: "Any person whose rights secured by the provisions of this title
26  have been infringed by any violation of this title may bring a civil action in a
27  district court of the United States for such relief (including injunctions) as may be
28  appropriate."

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

82.     Local 47 has deprived the members of the Ballet Orchestra of equal rights and privileges within Local 47, including but not limited to, by: (a) Appointing Opera Orchestra members to the orchestra and negotiating committee who are not part of the Ballet Orchestra bargaining unit and without a vote of members of the Ballet Orchestra; (b) Refusing to allow Ballet Orchestra members to attend, participate and vote in meetings of the negotiating committee; (c) Including members of the Opera Orchestra in the bargaining unit entitled to ratify any collective bargaining agreement with Music Center Dance contrary to the provisions of Article 5, Section 33(a) of the Bylaws of the AFM; (d) failing to maintain a current and accurate list of members of the Ballet Orchestra bargaining unit who would be entitled to vote on ratification of any new collective bargaining agreement.  By these actions, Local 47 violated and infringed plaintiffs' rights under Title I, Section 101(a)(1) of the LMRDA.

83.     By reason of defendant Local 47's violations of section 101(a)(1) of the LMRDA, plaintiffs have suffered damages and will suffer future damages, including lost wages and benefits, emotional distress, suffering and anxiety arising from loss of work.  In taking the actions alleged herein, Local 47 has acted with malice towards plaintiffs and other members of the Ballet Orchestra, with the intention and purpose to deprive them of work and employment opportunities, to transfer their bargaining unit work to the Opera Orchestra and to retaliate against plaintiffs and members of the Ballet Orchestra for their opposition to Local 47's actions, exercise of free speech, filing petitions and grievances and filing unfair labor practice charges.  By reason of such malice, plaintiffs are entitled to recover punitive damages against Local 47, to punish it and to make an example of it to deter such violations in the future.   Plaintiffs also seek costs and attorneys' fees incurred in this matter because of the common benefit conferred on union members by this action.

31

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

84.     Plaintiffs assert, and defendants dispute, whether Local 47 violated the duties owed plaintiffs and other members of the Ballet Orchestra alleged herein.  By reason of this dispute, the rights and duties of plaintiffs and other members of the Ballet Orchestra, on the one hand, and Local 47, on the other hand, are disputed and, without a judicial declaration of rights, the parties will be uncertain as to their respective rights and liabilities in the future in the conduct of their mutual relationships.

85.     Monetary damages cannot fully compensate plaintiffs for the losses alleged herein and therefore, in addition to money damages, plaintiffs request equitable and injunctive relief: (a) setting aside any new contract with Music Center Dance which was negotiated by Local 47 and directing Local 47 and/or the AFM to appoint new negotiators who are not hostile to or have a conflict of interest with the members of the Ballet Orchestra bargaining unit, and directing Local 47 to conduct elections for a new negotiating committee; and (b) declaring the rights and duties of the parties under the law alleged herein.

## THIRD CLAIM FOR RELIEF

### (Violations of LMRDA section 101(a)(2) [Against Local 47])

86.     Plaintiffs incorporate the allegations in paragraphs 1 through 61 hereof as if fully set forth in this Claim for Relief.

87.     Title I, Section 101(a)(2) of the LMRDA (29 U.S.C. § 411(a)(2)) provides, in material part, that: "Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings."

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

88.    Title I, Section 102 of the LMRDA (29 U.S.C. § 412) provides, in material part: "Any person whose rights secured by the provisions of this title have been infringed by any violation of this title may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate."

89.    By the acts alleged herein, including objecting to the subcontracting of bargaining unit work, demanding the right to elect members of the negotiating and orchestra committee, opposing inclusion of members of the Opera Orchestra on the negotiating and orchestra committee or in the bargaining unit for ratification of any new contract, filing petitions, charges, unfair labor practice charges and grievances, demanding that grievances be filed, and demanding that Local 47 negotiate for contract provisions protecting bargaining unit work, plaintiffs and other members of the Ballet Orchestra and Class were exercising rights protected by Section 101(a)(2) of the LMRDA.

90.    Local 47 retaliated against members of the Ballet Orchestra for exercising their rights of free speech, including but not limited to, by: (a) Presenting proposals to Music Center Dance that would deprive members of the Ballet Orchestra of bargaining unit work and which were contrary to the expressed and reasonable desires and requests of the members of the Ballet Orchestra; (b) Refusing to allow members of the negotiating committee to participate in union caucuses during negotiations and in meetings and negotiating sessions with Music Center Dance during the negotiations for a new collective bargaining agreement; (c) Concealing collective bargaining proposals that Local 47 intended to make from the negotiating committee and the Ballet Orchestra until presenting them to Music Center Dance as a union proposal in negotiations; (d) Agreeing to contract proposals and new contract terms that were contrary to the expressed and reasonable desires of the members of the Ballet Orchestra, that were contrary to the interests of the members of the Ballet Orchestra and that unreasonably and

33

arbitrarily favored the members of the Opera Orchestra; and (e) Presenting contract proposals and agreeing to new contract terms proposed by Music Center Dance without allowing members of the Ballet Orchestra or the Ballet Orchestra committee to review, discuss or vote upon such proposals prior to their presentation or prior to Local 47's agreement to new contract terms proposed by Music Center Dance.   By such actions Local 47 has infringed the rights of plaintiffs and other members under Title I, Section 101(a)(2) of the LMRDA. Furthermore, by revealing the identity of grievants to members outside of the bargaining unit, Local 47 has attempted to intimidate members and prevent such speech by the Ballet Orchestra in further violation of section 101(a)(2) of the LMRDA.

91.   By reason of defendant Local 47's violations of section 101(a)(2) of the LMRDA, Plaintiffs have suffered lost wages and other benefits.  Additionally, Plaintiffs have suffered distress and anxiety as to their future employment, loss of future work and employability.  In taking the actions alleged herein, Local 47 has acted with malice towards plaintiffs and other members of the Ballet Orchestra, with the intention and purpose to deprive them of work and employment opportunities, to transfer their bargaining unit work to the Opera Orchestra and to retaliate against plaintiffs and members of the Ballet Orchestra for their opposition to Local 47's actions, exercise of free speech, filing petitions and grievances and filing unfair labor practice charges.  By reason thereof, plaintiffs are entitled to punitive or exemplary damages against Local 47 in an amount sufficient to deter it from engaging in such conduct in the future.

92.   Plaintiffs assert, and defendants dispute, whether Local 47 violated the duties owed plaintiffs and other members of the Ballet Orchestra alleged herein.  By reason of this dispute, the rights and duties of plaintiffs and other members of the Ballet Orchestra, on the one hand, and Local 47, on the other hand, are disputed and, without a judicial declaration of rights, the parties will be

34

uncertain as to their respective rights and liabilities in the future in the conduct of their mutual relationships.

93.    Monetary damages cannot fully compensate plaintiffs for the losses alleged herein and therefore, in addition to money damages, plaintiffs request equitable and injunctive relief: (a) setting aside any new contract with Music Center Dance which was negotiated by Local 47 and directing Local 47 and/or the AFM to appoint new negotiators who are not hostile to or have a conflict of interest with the members of the Ballet Orchestra bargaining unit, and directing Local 47 to conduct elections for a new negotiating committee; and (b) declaring the rights and duties of the parties under the law alleged herein.

## FOURTH CLAIM FOR RELIEF

### (Violations of LMRDA section 101(a)(4) [Against Local 47])

94.    Plaintiffs incorporate the allegations in paragraphs 1 through 61 hereof as if fully set forth in this Claim for Relief.

95.    Title I, Section 101(a)(4) of the LMRDA (29 U.S.C. § 411(a)(4)) provides, in material part, that: "No labor organization shall limit the right of any member thereof to institute an action in any court, or in a proceeding before any administrative agency, irrespective of whether or not the labor organization or its officers are named as defendants or respondents in such action or proceeding * * *."

96.    Local 47 retaliated against members of the Ballet Orchestra for filing charges with the National Labor Relations Board , including but not limited to, by: (a) Presenting proposals to Music Center Dance that would deprive members of the Ballet Orchestra of bargaining unit work and which were contrary to the expressed and reasonable desires and requests of the members of the Ballet Orchestra; (b) Refusing to allow members of the negotiating committee to participate in union caucuses during negotiations and in meetings and negotiating sessions with Music

35

Center Dance during the negotiations for a new collective bargaining agreement; (c) Concealing collective bargaining proposals that Local 47 intended to make from the negotiating committee and the Ballet Orchestra until presenting them to Music Center Dance as a union proposal in negotiations; (d) Agreeing to contract proposals and new contract terms that were contrary to the expressed and reasonable desires of the members of the Ballet Orchestra, that were contrary to the interests of the members of the Ballet Orchestra and that unreasonably and arbitrarily favored the members of the Opera Orchestra; and (e) Presenting contract proposals and agreeing to new contract terms proposed by Music Center Dance without allowing members of the Ballet Orchestra or the Ballet Orchestra committee to review, discuss or vote upon such proposals prior to their presentation or prior to Local 47's agreement to new contract terms proposed by Music Center Dance.   By such actions Local 47 has limited the rights of union members to institute actions before the NLRB and violated and infringed plaintiffs' rights under Title I, Section 101(a)(4) of the LMRDA.

97.    By reason of defendant Local 47's violations of section 101(a)(4) of the LMRDA, plaintiffs have suffered damages and will suffer future damages, including lost wages and benefits, emotional distress, suffering and anxiety arising from loss of work.  In taking the actions alleged herein, Local 47 has acted with malice towards plaintiffs and other members of the Ballet Orchestra, with the intention and purpose to deprive them of work and employment opportunities, to transfer their bargaining unit work to the Opera Orchestra and to retaliate against plaintiffs and members of the Ballet Orchestra for their opposition to Local 47's actions, exercise of free speech, filing petitions and grievances and filing unfair labor practice charges.  By reason of such malice, plaintiffs are entitled to recover punitive damages against Local 47, to punish it and to make an example of it to deter such violations in the future.   Plaintiffs also seek costs and attorneys' fees

36

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

1  incurred in this matter because of the common benefit conferred on union members
2  by this action.

3      98.    Plaintiffs assert, and defendants dispute, whether Local 47 violated
4  the duties owed plaintiffs and other members of the Ballet Orchestra alleged
5  herein.  By reason of this dispute, the rights and duties of plaintiffs and other
6  members of the Ballet Orchestra, on the one hand, and Local 47, on the other hand,
7  are disputed and, without a judicial declaration of rights, the parties will be
8  uncertain as to their respective rights and liabilities in the future in the conduct of
9  their mutual relationships.

10     99.    Monetary damages cannot fully compensate plaintiffs for the losses
11 alleged herein and therefore, in addition to money damages, plaintiffs request
12 equitable and injunctive relief setting aside any new contract with Music Center
13 Dance which was negotiated by Local 47 and directing Local 47 and/or the AFM
14 to appoint new negotiators who are not hostile to or have a conflict of interest with
15 the members of the Ballet Orchestra bargaining unit and conduct elections for a
16 new Orchestra committee.

17

18                      **FIFTH CLAIM FOR RELIEF**
19   **(State Law and LMRA section 301(a) [Local 47's Breach of Local 47 and**
20                            **AFM Bylaws])**

21     100.   Plaintiffs incorporate the allegations in paragraphs 1 through 61
22 hereof as if fully set forth in this Claim for Relief.

23     101.   The Local 47 Bylaws constitute a contract between Plaintiffs and the
24 Class, on one hand, and Local 47, on the other hand.

25     102.   The Local 47 Bylaws are also a contract between Local 47 and the
26 AFM, and are a contract between labor organizations within the meaning of section
27 301(a) of the LMRA.

28

                              37

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

1    103.   The AFM Bylaws are a contract between Local 47, the AFM and their

2  members, including plaintiffs and members of the Class, and are a contract

3  between labor organizations within the meaning of section 301(a) of the LMRA.

4    104.   By the acts alleged herein, Local 47 has violated the provisions of the

5  Local 47 Bylaws and the AFM Bylaws, including but not limited to, by:

6          (a) allowing and agreeing to the subcontracting of bargaining unit

7      work to the Opera and Opera Orchestra contrary to the provisions of the

8      Music Center Dance CBA, in violation of its obligation under (1) Article

9      XII, Section 3 of Local 47's Bylaws not to induce members to perform

10     musical services which do not meet the minimum standards of collective

11     bargaining agreements and Article 5, Section 27(b) of AFM's Bylaws that

12     each member is bound by the terms of collective bargaining agreements, (2)

13     Article XII, Section 5 of Local 47's Bylaws to observe the principles of

14     good faith and fair dealing, (3) Article II, Section 1 of Local 47's Bylaws to

15     secure and provide improved wages, hours, working conditions and other

16     economic advantages for its members, and (4) Article 5, section 38(a) of the

17     AFM's Bylaws to provide competent representation in negotiations as the

18     situation requires and the orchestra members may reasonably request;

19         (b) conducting negotiations with Music Center Dance regarding the

20     new CBA in a manner that favored the members of the Opera Orchestra and

21     disfavored the members of the Ballet Orchestra, including proposing contact

22     terms that were detrimental to the interests of the Ballet Orchestra, excluding

23     members of the Orchestra Committee from bargaining meetings and

24     caucuses, and presenting and agreeing to bargaining proposals without input

25     from, discussion with or approval by the Orchestra Committee and that were

26     contrary to the reasonable requests of the Ballet Orchestra members, in

27     violation of its obligation under (1) Article XII, Section 5 of Local 47's

28     Bylaws to observe the principles of good faith and fair dealing, (2) Article II,

38

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

Section 1 of Local 47's Bylaws to secure and provide improved wages, hours, working conditions and other economic advantages for its members, and (3) Article 5, section 38(a) of the AFM's Bylaws to provide competent representation in negotiations as the situation requires and the orchestra members may reasonably request;

(c) concealing from and failing to advise members of the Music Center Dance bargaining unit of its actions and its agreement to subcontracting bargaining unit work, in violation of the rights of members under Article XIII, Section 2 of Local 47's Bylaws to information as to Local 47 actions affecting them;

(d) failing to seek ratification of its agreement to allow the Opera to act as a contractor under the CBA and to allow the Opera Orchestra to perform bargaining unit work, as such agreement constituted a renegotiated collective bargaining agreement, in violation of Article XIII, Section 5 of Local 47's Bylaws and Article 5, Section 33(a) of the AFM's Bylaws;

(e) appointing persons to the Orchestra committee who had a conflict of interest with and actively opposed the Music Center Dance bargaining unit's interests and desires, who were not members of the Ballet Orchestra bargaining unit, who were not eligible to serve on the Ballet Orchestra committee, and refusing to conduct an election for members of the Ballet Orchestra negotiating and orchestra committee, in violation of Article 5, Sections 38(a) and 39 of the AFM Bylaws and Article XII, Section 5 of Local 47's Bylaws;

(f) failing to maintain records of the members of the Ballet Orchestra bargaining unit and defining the group entitled to ratify the collective bargaining agreement in an arbitrary manner and to include persons who did not work under the previous CBA, in violation of the provisions of Article 5, Sections 33(a) and 33(c) of AFM's Bylaws;

39

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

(g) failing to file a timely grievance over the subcontracting of bargaining unit work to the Opera and Opera Orchestra, and/or seek arbitration of the grievance filed by the Ballet Orchestra members after that grievance did not settle, in violation of its obligation under (1) Article XII, Section 5 of Local 47's Bylaws to observe the principles of good faith and fair dealing, (2) Article II, Section 1 of Local 47's Bylaws to secure and provide improved wages, hours, working conditions and other economic advantages for its members and (3) Article 5, section 38(a) of the AFM's Bylaws to provide continuing contract administration, including the handling of grievances and arbitration;

(h) failing to file a grievance over or take other action as to Music Center Dance's use of taped music, in violation of its obligation under (1) Article XII, Section 5 of Local 47's Bylaws to observe the principles of good faith and fair dealing, (2) Article II, Section 1 of Local 47's Bylaws to secure and provide improved wages, hours, working conditions and other economic advantages for its members, (3) Article 5, section 38(a) of the AFM's Bylaws to provide continuing contract administration, including the handling of grievances and arbitration, and (4) Article 14, section 4(e) of the AFM's Bylaws that prohibit union agreements to terms in collective bargaining agreements that allow use of taped music to displace live musicians.

105.   Plaintiffs have been damaged by Local 47's violations of the provisions of Bylaws alleged herein, including loss of past and future wages and benefits.

106.   Plaintiffs assert, and defendants dispute, whether Local 47 violated the duties owed plaintiffs and other members of the Ballet Orchestra and the terms of the Bylaws alleged herein.  By reason of this dispute, the rights and duties of plaintiffs and other members of the Ballet Orchestra, on the one hand, and Local

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

1   47, on the other hand, are disputed and, without a judicial declaration of rights, the

2   parties will be uncertain as to their respective rights and liabilities in the future in

3   the conduct of their mutual relationships.

4       107.   Monetary damages cannot fully compensate plaintiffs for the losses

5   alleged herein and therefore, in addition to money damages, plaintiffs request

6   equitable and injunctive relief:  (a) setting aside any new contract with Music

7   Center Dance which was negotiated by Local 47 and directing Local 47 and/or the

8   AFM to appoint new negotiators who are not hostile to or have a conflict of

9   interest with the members of the Ballet Orchestra bargaining unit and conduct

10  elections for a new Orchestra committee and (b) declaring the rights and duties of

11  the parties under the law and the terms of the Bylaws alleged herein.

12

13  **SIXTH CLAIM FOR RELIEF**

14  **(LMRA section 301(a) [AFM Breach of the AFM Bylaws])**

15      108.   Plaintiffs incorporate the allegations in paragraphs 1 through 61

16  hereof as if fully set forth in this Claim for Relief.

17      109.   The AFM Bylaws are a contract between Local 47, the AFM and their

18  members, including plaintiffs and members of the Class, and are a contract

19  between labor organizations within the meaning of section 301(a) of the LMRA.

20      110.   By the acts alleged herein, AFM has violated the provisions the AFM

21  Bylaws by refusing to appoint a mediator to resolve disputes between Local 47 and

22  the Ballet Orchestra for reasons that are arbitrary, discriminatory and in bad faith,

23  and contrary to the terms of its Bylaws, in violation of its obligations under Article

24  5, Section 38(b)(1) of the AFM Bylaws.

25      111.   Plaintiffs have been damaged by the AFM's violations of the

26  provisions of its Bylaws alleged herein, as the foreseeable consequence of this

27  violation has been the failure of Local 47 to negotiate collective bargaining terms

28  protecting the bargaining unit work of the Ballet Orchestra and Local 47's proposal

1  of contract terms that are detrimental and adverse to the interests of the Ballet

2  Orchestra.

3      112.   Plaintiffs assert, and defendants dispute, whether the AFM violated

4  the duties owed plaintiffs and other members of the Ballet Orchestra and the terms

5  of its Bylaws alleged herein.  By reason of this dispute, the rights and duties of

6  plaintiffs and other members of the Ballet Orchestra, on the one hand, and the

7  AFM, on the other hand, are disputed and without a judicial declaration of rights,

8  the parties will be uncertain as to their respective rights and liabilities in the future

9  in the conduct of their mutual relationships.

10     113.   Monetary damages cannot fully compensate plaintiffs for the losses

11 alleged herein and therefore, in addition to money damages, plaintiffs request

12 equitable and injunctive relief: (a) setting aside any new contract with Music

13 Center Dance which was negotiated by Local 47 and directing Local 47 and/or the

14 AFM to appoint new negotiators who are not hostile to or have a conflict of

15 interest with the members of the Ballet Orchestra bargaining unit and conduct

16 elections for a new Orchestra committee and/or directing AFM to appoint a

17 mediator pursuant Article 5, Section 38(b)(1) of the AFM Bylaws to seek to

18 resolve disputes prior to any continuation of collective bargaining with Music

19 Center Dance; and (b) declaring the rights and duties of the parties under the law

20 and the terms of the Bylaws alleged herein.

21     W H E R E F O R E, Plaintiffs pray for relief as follows:

22 1.    For an order certifying the action as a class action, appointing plaintiffs as

23       Class Representatives and their counsel as attorneys for the Class;

24 2.    Against Professional Musicians Local 47 (Local 47):  (a) *On the First and*

25       *Fifth Claims for Relief:* A declaration that Local 47 breached its duty of fair

26       representation and violated its Bylaws and/or the Bylaws of the AFM, and

27       an award against Local 47 of damages arising from such breach of duty and

28       violation of Bylaws, including back pay and benefits, front pay and benefits,

attorney fees and expenses and emotional distress and suffering, caused by that breach of duty and violation of Bylaws, and for other equitable relief, as alleged more specifically in such Claims.  (b) *On the Second, Third and Fourth Claims for Relief:*  Actual, compensatory and punitive damages, costs and attorneys' fees, equitable and injunctive relief and a declaration of rights, as alleged more specifically in such Claims.

3.   Against Performing Arts Center of Los Angeles County (Music Center Dance): *On the First Claim for Relief:* Damages arising from its breaches of the collective bargaining agreement, including back pay and benefits, front pay and benefits, and equitable and injunctive relief and a declaration of rights, as alleged more specifically in such Claim.

4.   Against American Federation of Musicians (AFM):  *On the First and Sixth Claims for Relief:* A declaration that AFM breached its duty of fair representation and violated its Bylaws and an award against AFM of damages arising from such breach of duty and violation of Bylaws, including back pay and benefits, front pay and benefits, and for other equitable relief, attorney fees and expenses and emotional distress and suffering, caused by that breach of duty and/or violation of Bylaws, as alleged more specifically in such Claims.

5.   Plaintiffs' costs of suit and reasonable attorney fees.

6.   Such other and further relief the Court may deem appropriate on the evidence presented.

Dated:  June 13, 2012             KATZENBACH LAW OFFICES

By _____
        Christopher W. Katzenbach
        Attorneys for Plaintiffs JONATHAN DAVIS,
        PHILIP EVANS AND MINDY BALL

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JURY TRIAL DEMAND**

Plaintiffs demand a trial by jury on all issues and claims for relief in this action.

Dated:  June 13, 2012                KATZENBACH LAW OFFICES

By

Christopher W. Katzenbach
Attorneys for Plaintiffs JONATHAN DAVIS,
PHILIP EVANS AND MINDY BALL

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

# MASTER AGREEMENT

## ARTICLE I
## PARTIES, TERM, AND APPLICABILITY

**A.** **Parties:**  The PERFORMING ARTS CENTER OF LOS ANGELES COUNTY (Music Center Dance) hereinafter called the "Employer," and the PROFESSIONAL MUSICIANS, Local 47, American Federation of Musicians, hereinafter called the "Local," agree to the following terms and conditions, hereinafter called the "Agreement."

**B.** **Term:**  This Agreement shall be in effect during the period commencing January 1, 2009, and continuing through December 31, 2011, and from calendar year to calendar year thereafter unless written notice is given by either party to the other of its desire to terminate or modify the Agreement as provided in 29 USC section 158 (d).

**C.** **Services Covered:**  This Agreement shall apply in full to all services performed by musicians who are employed by Employer at the Ahmanson Theatre or the Dorothy Chandler Pavilion for ballet productions produced by Music Center Dance during the term of this Agreement.

## ARTICLE II
## RELATIONSHIP OF THE PARTIES

**A.** **Notice:**  The Employer shall provide the Local with a 10-day written notice prior to the opening of any new ballet production subject to this Agreement, giving the following information:  1) Type of production; 2) Name of production; 3) Date(s) of engagement; 4) Name of Contractor; 5) The number of Musicians authorized to be hired for the production and the names and social security numbers of musicians hired as of notification date.

**B.** **Recognition:**  The Employer recognizes the Local as the sole and exclusive bargaining agent for the purpose of collective bargaining agent for the purpose of collective bargaining with respect to wages, hours, and other terms and conditions of employment of the Musicians covered by this Agreement.

**C.** **Union Membership:**  Any Musician whose services are subject to this Agreement who is a member of the Local on the effective date of this Agreement, or who becomes a member of the Local during the term of this Agreement, shall, as a condition of employment, remain a member in good standing, as that term is defined in applicable federal law, of the Local.  Any Musician whose services are subject to this Agreement who, on the effective date of this Agreement, is not a member of the Local shall, no later than the 30th day after the effective date of this Agreement, become, and remain, a member in good standing, as that term is defined in applicable federal law, of the Local.  Any Musician hired by the Employer after the effective date of this Agreement to perform services subject to this Agreement, shall, as a condition of employment, become a member in good standing, as that term is defined in applicable federal law, of the Local no later than the 30th day following the date of his first covered service for the Employer.  Nothing contained herein shall, however, require the Employer to discharge or in any way discriminate against any employee who has been denied membership or has had his/her membership in the Local terminated for any reason other than the failure of such employee to tender the periodic dues and initiation fees uniformly required as a condition of acquiring or retaining membership.

**D.** **Work Dues Check-Off:**  Upon receipt of a signed authorization from the employee, the Employer shall deduct for the compensation of each musician the uniformly required Work Dues of the Local, and shall transmit such deducted sums to the Local no later than the tenth day of the month following the month in which the sums have been deducted.  The Local agrees to indemnify the Employer and hold it harmless against any and all suits, claims, demands, and liabilities for damages or penalties that may arise out of or by reason of any action that shall be taken by the Employer for the purpose of complying with the provisions of Sections C and D of this Article.

**E.** **Union Rules:**  All rules and regulations of the Local in effect of this date and not in conflict with the specific terms of this Agreement shall be applicable as part of this Agreement.   All such rules and regulations, together with the terms and conditions of this Agreement, shall constitute the entire Agreement between the parties with respect to the subject matters set forth in this Agreement.

**F.** **Conflict of Duties:**  Nothing in this Agreement shall be construed as to interfere with the obligations owed to the Local or to the American Federation of Musicians by musicians engaged by the Employer, including their obligation to honor a lawful primary picket line when the establishment of such picket line has been authorized and approved by the American Federation of Music ians.

G. **Right of Access:** Representatives of the Local shall have access to the place of any service for the purpose of conferring with the Musicians.

H. **Non-Discrimination:** The Employer and the Local shall comply with all applicable local, State and Federal non-discrimination laws. Further, the Employer shall not discriminate against any Musician as to employment for any consideration not related to the employee's competence to perform the duties of a Musician, *e.g.*, race, religion, sex, age, national origin, ethnic background, political affiliation, union activities, sexual orientation, or reasonably accommodated physical or mental disability.

## ARTICLE III
## MINIMUMS

A. **Local Musicians:** Except as otherwise provided in this Article, the Employer shall employ a minimum of Local 47 musicians (including a Contractor) for each production based on a formula of one musician for each 100 seats or major fraction thereof made available for public seating by the configuration of the theatre used for that production.

B. **Traveling Shows:** In the case of productions traveling under Federation Pamphlet B, the minimums stated above shall be limited to those allowed in Pamphlet B, and all other provisions relating minimums contained therein shall apply.

C. **Exceptions:** No minimums shall apply to a self-contained production, and the Employer shall have the right to request from the Local an adjustment in the above guaranteed minimums for productions whose original scoring or recast idiomatic adaptation explicitly calls for fewer music ians than the minimums specified. Permission for such an adjustment shall not be unreasonably withheld.

## ARTICLE IV
## COMPENSATION

A. **Applicability:** All scales and conditions set forth in this Article shall be applicable only to ballet productions as described in Article I C. Contractors who are signatories to Local 47 may utilize the rates and conditions of this Agreement for ballet performances at the Performing Arts Center only when serving as a Contractor for the Employer.

B. **Ballet Scales:** Base Scale for the 3-hour minimum call for each ballet performance and rehearsal shall be as follows:

| Date | 2009 | 2010 | 2011 |
|------|------|------|------|
| Performance | $210.28 | $215.54 | $222.01 |
| Rehearsal | $166.09 | $170.24 | $175.35 |

C. **Minimum Call:** Except as provided in Section D *infra*, a 3-hour minimum call shall apply to all ballet services. Time beyond the minimum call shall be calculated in half-hour minimum segments. For rehearsals, any time beyond the minimum call shall be paid at 110% of the regular hourly rate.

D. **Special 1-hour Rehearsals:** On opening night or where a principal understudy or major cast replacement is being utilized for the first time, the Employer shall have the right to call a rehearsal of not more than one hour ending approximately one-half hour before the start of the performance. Scale for this one-hour rehearsal shall be prorated to corresponding Rehearsal Scale.

E. **Break Before Performances:** Except as otherwise provided, a rehearsal – including any overtime – must end at least one hour before the start of a performance. In the event a rehearsal is held during any part of the hour immediately preceding a performance, there shall be a premium of $20.00 in addition to the applicable scale for the rehearsal.

F. **Dress Rehearsals:** Dress rehearsals shall be regarded as performances and compensated at the performance rates.

G. **Rehearsal Pianists:** The Employer may call a pre-show rehearsal for a rehearsal pianist before any performance. When playing rehearsals together with the orchestra, the payment and conditions for a rehearsal pianist shall be the same as for a pit musician. For all services, the rehearsal pianist shall be covered by the same provisions that apply to other musicians regarding premium time, pension, health and welfare, vacation, sick leave, etc. Scale for a rehearsal pianist shall be $48.00 per hour with a 3-hour minimum call. Time beyond the 3-hour call shall be paid at the same hourly rate for up to eight hours, computed in half hour segments. Time beyond eight hours, or any time on a seventh consecutive day, shall be paid at 150% of the hourly rate, computed in half-hour segments. When a rehearsal pianist is required to be on call throughout a week, that pianist shall be guaranteed a minimum of 42 hours for that week.

H. **Contractor/Conductor:** The scale for the Contractor and, when applicable, for a local Conductor shall be double Base Scale.

2

**I. Assistant Conductor:** The scale for a designated Assistant Conductor shall be 130% of Base Scale. When an Assistant Conductor is actually conducting, the scale shall be double Base Scale. In such event, or in the event that the Assistant Conductor is absent from a service, another musician shall be designated as Assistant Conductor and receive the appropriate compensation. Alternatively, the Assistant Conductor's premium of 30% of Base Scale may be used for additional premium scale at the Employer's option.

**J. Ballet Premiums:** For ballet productions, the Concertmaster shall receive double Base Scale, and all Principals shall receive 150% of Base Scale and all Associate Principals shall receive 125% of Base Scale. For purposes of this Section, Principal shall be defined as the Assistant Concertmaster plus the first chair player in each of the following sections: 2nd Violin, Viola, Violoncello, Double Bass, Flute, Oboe, Clarinet, Bassoon, Horn, Trumpet, Trombone, Tuba, Timpani, Percussion, Harp, and Keyboard. For purposes of this Section, Associate Principal shall be defined as 3rd Chair First Violin Section, 2nd Chair 2nd Violin Section, 2nd Chair Viola Section, 2d Chair Cello Section, 2nd Chair Double Bass Section, and set Drummer.

**K. Librarian:** The Employer may employ a local musician as a playing librarian, the scale for whom shall be 150% of Base Scale, or as a non-playing librarian, who shall be paid Base Scale.

**L. Premium Times:** The scale for all work after Midnight shall be 150% of the otherwise applicable scale, computed in half-hour segments. The scale for services on New Year's Eve shall be double the normal scale.

**M. Seventh Consecutive Day:** The scale for any individual musician working on a seventh consecutive day shall be 150% of that musician's regular wage scale. Any musician, including a mutually agreed upon substitute who works for seven consecutive days, shall receive this premium.

**N. Time Spread:** Except where they are matinee and evening performances on the same day, musicians shall receive additional compensation whenever the working day (time called until time dismissed) including rehearsals exceeds eight hours. The additional compensation shall be:

| Working Day | 1/1/09—12/31/11 |
|---|---|
| Greater than 8 to 10 hours | $10.00 |
| Greater than 10 to 12 hours | $22.00 |
| Greater than 12 hours | $34.00 |

**O. Doubling:** All the additional instruments shall be classified as doubles. Any individual amplifier or any electronic device used to alter or enhance the sound of an acoustic instrument shall be considered as a double for that instrument. Payment shall be 25% of the applicable scale for the first double, and 10% for each double thereafter. For purposes of this section, a trap drummer's regular set shall be considered a single instrument.

**P. Moves:** Any musician who is required to move during any performance from the pit to the stage or from the stage to the pit shall be paid $12.00 in addition to the regular wages for each performance.

**Q. Music Preparation:** Base scales for any musician engaged by the Employer to perform any music preparation services covered by Local's current *Wage Scales, Rules and Regulations Applicable to Music Preparation for Live Engagements* shall be the scales set forth for such work in that document.

**R. Pension Contributions:** The Employer shall be bound by the *Agreement and Declaration of Trust Establishing the American Federation of Musicians and Employers' Pension Fund* (as it has been and may be amended), which is incorporated herein by reference as though set forth in full. The Employer shall make contributions to the AFM-EPF on behalf of each musician it employs at the percentage of that Musician's Scale wages as set forth below.

| 2009 | 2010 | 2011 |
|---|---|---|
| 12% | 12% | 12% |

**S. Health & Welfare Contributions:** The Employer agrees to be bound by the Musicians' Union Local 47 and Employer's Health and Welfare Trust Agreement of February 12, 1970, as amended, and agrees to make contributions to the Musicians' Union Local 47 and Employer's Health and Welfare Fund – by separate check payable to the Health and Welfare Fund –at the percentage of that Musician's Scale wages as set forth below.

| 2009 | 2010 | 2011 |
|---|---|---|
| 10% | 11% | 12% |

## ARTICLE V
## CARTAGE AND PARKING

**A. Cartage:** Cartage for percussion and harp shall be paid at current rates for common carrier or private

treaty. For ballet production, cartage at the rate of $12.00 per day shall also be paid for the following: Violoncello, string bass, contrabass, clarinet, contrabassoon, baritone saxophone, bass saxophone, bass trombone, tuba, and amplifier.

**B. Parking:** The Employer shall provide or reimburse parking to every musician engaged, including the Contractor, for all services. The Employer shall not however, be required to furnish or reimburse parking to both a regular musician and the musician's substitute for the same service.

## ARTICLE VI
## PAYMENTS

**A. Over-Scale Payments:** All wage scales stated in this Agreement are guaranteed minimums. Nothing stated in this Agreement shall be so construed as to prohibit any musician from negotiating for higher wages nor as to prohibit the Employer from agreeing to the same.

**B. Wages:** Payment for all Services shall be made within 15 working days of each Performance. Wages and/or other compensation not paid within this time period shall be subject to liquidated damages of 5% of the amount due plus an additional 5% for each additional 15 day period that the payments are late.

**C. Dues and Benefits Payments:** Payment of work dues and of contributions to the AFM-EPF and the Professional Musicians, Local 47, and Employers Health and Welfare Fund shall be made not later than the 15th day of the month which follows each Performance. Work dues and/or benefit contributions not paid within this time period shall be subject to liquidated damages of 20% of the amount due plus and additional 20% for each additional month the payments are late.

## ARTICLE VII
## SUBSTITUTIONS

**A. Authorization for Substitutes:** No substitutes shall be permitted without the permission of the Employer or the Contractor. Under no circumstances shall the Conductor be authorized to permit substitutes, nor shall a musician accept permission for a substitution from the Conductor.

**B. Maximum Number:** In any section containing more than one musician, the maximum number of substitutions that shall be allowed for any one service shall be 50% of the members of that section.

**C. Substitute Lists:** Prior to the date of the official opening, each musician may furnish the Contractor with a list of not more than three available substitutes. The Contractor and the Conductor shall review the musician's list to determine whether each of the substitutes is acceptable to them. If the Contractor and Conductor find any substitutes unacceptable, the musician shall replace such unacceptable substitute with an acceptable substitute.

**D. Engagement of Substitutes:** The Contractor shall engage such substitutes as are necessary and put them on the payroll. If none of the acceptable substitutes are available, the musician originally hired for the chair must render services unless the Contractor assumes the responsibility to acquire an adequate substitute or delegates the musician to do so.

**E. Auditing of Performance:** A substitute must audit at no expense to the Employer during one prior performance before acting as a substitute, provided that if an individual has so qualified and thereafter more than one calendar week elapses without any performance as a substitute, the substitute may be required to audit again during a performance, also at no expense to the Employer, before again acting as a substitute. The Musician requesting a substitute under the provisions of this paragraph shall pay such substitute 50% of performance scale.

**F. Alternate Musicians:** Any musician performing as a substitute for three performances in any one production shall be designated as an alternate musician for such production, and may take the place of a musician for any performance without regard to the provision of Section B of this Article, provided that both an alternate musician and a substitute shall not be permitted for the same performance for a first chair part played by two musicians. If the alternate musician performs in a single chair position and more than one calendar week elapses without his/her performing as an alternate musician, then he/she may, at the option of the Contractor, lose his/her designation as an alternate musician and shall regain such designation as an alternate musician only after again auditing or actually substituting for a performance. If the alternate musician performs in a multi-chair position and more than three calendar weeks elapse without his/her performing as an alternate musician, he/she shall lose the designation as an alternate musician and shall regain such designation as an alternate-musician only after again reviewing the book or actually substituting for a performance.

G. **Payment of Substitutes:** A substitute musician may be paid in the week following the week of the performance as a substitute.

## ARTICLE VIII
## CALLS AND INTERMISSIONS

A. **Call Specification:** The Employer shall specify in advance the call time for the entire production run. On opening night a 5-minute grace period shall be allowed, in which event the performance shall end five minutes later with no overtime paid for such period.

B. **Rehearsal Intermissions:** For all rehearsals exceeding 2 1/2 hours, an intermission of at least 10 minutes shall be allowed out of each hour of rehearsal. For rehearsals which do not exceed 2 ½ hours, total intermission time of 20 minutes shall be allowed. In no event shall any playing segment of the rehearsal exceed 75 minutes.

C. **Ballet Performances:** For ballet performances, the 3-hour minimum call shall include a single intermission of not less than 20 minutes or two intermissions of not less than 15 minutes each or three intermissions of not less than 12 minutes each. An additional five minutes of intermission time shall be allowed for each half-hour of overtime. An intermission shall be taken after 75 consecutive minutes of playing except in the case of performances of works or acts the duration of which is more than 75 minutes.

## ARTICLE IX
## SICK LEAVE

A. **Calculation of Sick Leave:** On engagements of eight or more consecutive weeks, a musician shall be credited with one day's sick leave for every 64 services. A musician may accumulate sick leave for the entire run of a production. At the conclusion of the run, each musician shall have the option of carrying over all unused sick leave credits as sick leave days for the run of the next production or, in the alternative, be paid 50% of the unused sick leave credits. In the event that the musician is not engaged for the next production, the musician shall receive pay of 50% for all unused sick leave credits. All sick leave pay and all payments for unused sick leave shall be based upon all payments that the musician would have earned had the musician performed the service, including any premiums and doubles.

B. **Short-Term Productions:** On engagements of fewer than eight consecutive weeks, a musician shall receive, in lieu of sick leave, additional payment equal to .78%

of his/her scale earnings, including any premiums or doubles.

C. **Proof of Illness:** The Employer may request reasonable proof of illness when a musician takes sick leave time.

## ARTICLE X
## WORKING CONDITIONS

A. **Comfort Standards:** The Employer shall provide for the use of the musicians adequate facilities for the changing of clothes and for the storage of their instruments and equipment. The facilities provided for changing clothes shall be maintained at a temperature suitable to the reasonable comfort of the musicians during their occupancy thereof. The Employer shall make every effort to insure that the facilities provided for storage shall be maintained at all times at a temperature proper to assure the safety of the instruments stored.

B. **Safety Standards:** The Employer shall at all times maintain the orchestra pit and any other places used by the musicians in the execution of their occupational duties in accordance with the applicable guidelines for safety and health established by the United States Occupational Safety and Health Administration.

C. **Obligation to Report:** Each musician shall have an obligation to advise the Orchestra Committee immediately of any condition the musician regards as unhealthy or unsafe. The Orchestra Committee shall in turn immediately report the same to the Contractor so that the condition may be considered and corrected. At no time shall any musician perform under any conditions which constitute a hazard to his/her health or to his/her musical instruments or equipment.

## ARTICLE XI
## ELECTORNIC MEDIA

A. **Promotional Taping:** The Employer or its designee may audio-tape or video-tape fragments of any Service for one-time only promotional use on local news or magazine type programs with no additional compensation to the musicians, provided that the resultant showing of that service does not exceed two minutes. Should any tapes made under this provision ever be used for any other purpose, e.g., sound recordings, commercial announcements, audition or demonstration tapes, or background music for any type of sound or film program, the Employer shall fulfill all conditions required by the appropriate agreement of the American Federation of Musicians, including, but not

limited to, the payment of prevailing wages and benefits.

**B. Recording Prohibition:** Except as explicitly provided in the previous Section, no service or any part thereof shall be recorded, reproduced or transmitted from the place of performance in any manner or by any means whatsoever, by the Employer or by any other person, in the absence of a specific written agreement with and/or approved by the American Federation of Musicians' International Office. This prohibition shall not be subject to any of the Arbitration Procedure of this Agreement, or to any form of arbitration, and the American Federation of Musicians may enforce this prohibition in any court of competent jurisdiction.

**C. Use of Taped Music:** At no time shall the Employer use or permit the use of any music, recorded or programmed on any other media (i.e.: tape, CD, DVD, Hard Disk, Removable Disk, etc.) for any performance, except with the prior written consent of the Local. Use of computer programmed sequencers: Employer shall not use computer programmed sequencers (on disk, hard drive, or any device that has capability of pre-recording musical sounds) and similar technology (including "Virtual Orchestra" and like systems) currently or hereafter developed in place of, or in addition to, its orchestra accompaniment without the permission of the Local. Notwithstanding the above, keyboard synthesizers that recreate musical sounds and which are played by musicians in real time may be used by the Employer without further permission from the Local. No restrictions shall apply, however, to any productions – or any selection(s) thereof – which originated without orchestration and have always been performed with taped or recorded music.

## ARTICLE XII
## GRIEVANCE AND ARBITRATION

**A. Scope of Grievances:** A Grievance shall include any claim, controversy, or dispute arising out of this Agreement in regard to its existence, validity, construction, performance, non-performance, breach, operation, continuance, termination, or other reasons, including the arbitrability of any dispute arising between the parties. All Grievances shall be resolved by the procedures set forth in this Article.

**B. Initiation of Arbitration:** To initiate the Grievance procedure, the Employer or the Local, or an affected musician through the Local, shall file a written statement with the other party within 30 days of the events(s) on which the Grievance is based, or from the date that the grievant first had, or reasonably should

have had, knowledge of the event(s) setting forth the nature of the Grievance and all pertinent information needed to understand the claim, controversy, or dispute. Within 10 days after the filing of such statement, representatives of the Employer and the Local shall meet and confer in an attempt to settle the Grievance. If no settlement is reached, either party may request that the Grievance be submitted to arbitration by serving written notice to the other party within 10 days following the date of the meeting. Unless either party has notified the other in writing of any changes in its address, a notice mailed to the last address on record shall be deemed adequate notice of request for arbitration.

**C. Choice of Arbitrators:** When a written notice requesting arbitration has been served, the Employer shall choose one of the Options for arbitration set forth below. If the Employer fails to notify the Local in writing of its choice of one of the aforestated options within 15 days from the date of the request for arbitration, arbitration shall be heard in accordance with Option No. 2-AAA.

Option No. 1 – Hearing Board:

The Grievance shall be submitted to the Hearing Board of the Local ("Hearing Board") for arbitration in accordance with its rules of procedure and the Bylaws of the Local. The arbitration services of the Hearing Board shall be available at no cost to the Employer.

Option No. 2 – AAA:

The Grievance shall be submitted to the American Arbitration Association (AAA) for arbitration in accordance with its rules and regulations, and shall be heard by an arbitrator selected in accordance with those rules and regulations. The Employer and the Local shall share equally the cost of the arbitrator and the administrative cost of the AAA. At the hearing, a court reporter may be present at the expense of the requesting party.

**D. Hearing and Decision:** The arbitrator(s) shall hear all parties present and examine all evidence offered and shall render a decision based only upon that record. Under no circumstances shall the arbitrator(s) have the authority to add to, modify, or amend any of the terms of this Agreement. The decision of the arbitrator shall be final and binding upon the Employer, the Local, and any affected musician(s).

**E. Enforcement:** Any party to the dispute may seek to enforce the award as provided by the California Code

of Civil Procedure or the Federal Arbitration Act. If court action is needed to obtain compliance by the losing party with an arbitration award hereunder, the losing party shall pay, in addition to the principal amount of any monetary damages awarded, interest at an annual rate of 12% on those monetary damages from the date of written demand for payment to the date of judgment, and shall pay reasonable attorney's fees.

# ARTICLE XIII
# MISCELLANEOUS

A. **Employer's Rights:** The Employer shall at all times have complete supervision, direction and control over the services of musicians, and expressly reserves the right to control the manner, means and details of the performance of services by the musicians-as well as the ends to be accomplished.

B. **Contractor's Authority:** The Contractor shall be the sole agent of the Employer and shall be responsible for the hiring of musicians under this Agreement.

C. **Force Majeure:** The obligation of the parties to this Agreement and of the musicians to perform is subject to proven detention by sickness, accidents, strikes, riots, epidemics, Acts of God, or any other legitimate conditions beyond their control.

D. **Cancellation:** Except as provided in the previous Section, if a service is cancelled and notification is given to musicians 30 days or more before the date of that service, no payment shall be due to the musicians hired. If less than 30 days' notification is given, the musicians hired shall receive pay for the cancelled service up to a maximum of two weeks' pay. However, if a cancellation of a dance service is the result of a major dancer injury, a seven-day notification after injury shall suffice without penalties. A musician who has accepted employment shall have the right to be disengaged without penalty by giving 14 days' notice.

E. **No Strike/No Lockout:** During the term of this Agreement there shall be no collective cessation of work by employees covered by this Agreement nor any general lockout of the said employees by the Employer for any reason, cause, or matter subject to the Grievance Procedure contained herein.

F. **Discharge:** In the event of an open-ended engagement, before discharging any musician(s)

employed under the terms thereof, the Employer shall give notice prior to the opening performance of the work week or pay an equivalent amount of severance pay as follows: On engagements which have run less than 26 weeks, two weeks' notice or two weeks' severance pay in lieu thereof; on engagements which have run 27 through 52 weeks, three weeks' notice or three weeks' severance pay in lieu thereof; in excess of 52 weeks, four weeks' notice or four weeks' severance pay in lieu thereof. Musicians desiring to terminate employment shall give the Employer the same amount of notice which the musicians are entitled to receive. The cumulative weeks specified in this paragraph and the cumulative weeks of successive contracts for continuous employment shall be computed from the starting date of this Agreement or any prior agreement. All notices required shall be in writing.

G. **Orchestra Committee:** An Orchestra Committee consisting of Musicians with recent work experience for the Employer may be designated by the Local and shall act with the Local's consent and direction to work with the Employer to resolve problems, discuss concerns and otherwise communicate issues and information between the Employer and the musicians of the orchestra. Meetings between the Orchestra Committee and the Employer shall be held at times mutually agreeable to the Committee and the Employer.

H. **Captions:** The captions used throughout this Agreement are for convenience and reference only, and shall not be used to construe any provisions.

I. **Severability:** If any part, term, or provision of this Agreement is for any reason held to be illegal or in conflict with any law, Federal, State, or Local, the validity of the remaining portions and provisions shall not be affected, and the rights and obligations of the parties shall be construed and enforced as if the Agreement did not contain the particular part, term, or provision so held to be invalid.

J. **Waivers:** Either party shall have the right, upon a showing by one party of emergency or special need satisfactory to the other party, to grant a written waiver or compromise of any of the terms and conditions of this Agreement for such special situation or emergency. The waiver of any provision of this Agreement by either party shall not constitute a precedent for any further waiver of such provision.

K. **Amendment:** The parties shall, by mutual agreement, have the right to amend this Agreement during its term if they both believe that an emergency or an unforeseen circumstance make such amendment essential or

desirable.  In such an event the parties may meet to discuss the item(s) in question and to seek a mutually accepted solution to the problem(s).  Nothing in this Section, however, shall be construed as requiring either party to enter into such discussions against its will nor as requiring either party to consent to amend the Agreement because it has allowed discussion of the issue.

THIS AGREEMENT executed by the duly authorized agents of the parties this _____ day of_____, 2009.

**Performing Arts Center of Los Angeles County**

**Professional Musicians, Local 47**

By_____
    **William Meyerchak,**
    **Vice President of Finance /CFO**

By_____
      **Vince Trombetta, President**

# Sideletter

to
Collective Bargaining Agreement
between
PERFORMING ARTS CENTER OF LOS ANGELES COUNTY
and
PROFESSIONAL MUSICIANS, LOCAL 47

This letter shall serve as a Side Letter to the Master Agreement between the Performing Arts Center of Los Angeles County (the "Employer") and the Professional Musicians, Local 47, American Federation of Musicians (the "Local") with respect to archival taping of performances.

The procedure for archival taping of performances shall be as follows:

A. **Archival Tapes:** Audio archival tapes– and/or video archival tapes made with a single camera with monaural sound to preserve staging, etc. – may be made of any Service for the use of conductors, composers, guest artists, and/or Covered Musicians under the following conditions:

(1) The tapes shall be used exclusively for study purposes;

(2) Except as provided in (6) below, tapes shall remain at a supervised area agreed upon mutually by the Local, the Covered Musicians, and the Employer;

(3) No user of tapes shall be allowed access to the supervised area with recording equipment of any kind in his or her possession;

(4) Representatives of the Local shall have access to the tapes and premises upon request;

(5) Each recording shall be catalogued by number and according to content in a written log;

(6) Except as otherwise provided by the rules of the American Federation of Musicians, no additional copies of any tape shall be made for any reason whatsoever, except that the Employer may, totally at its own risk and responsibility, make an additional copy of a portion of a study tape (which may not be further duplicated) for the National Endowment for the Arts or, with the prior approval of the Local, other grant-making organizations in fulfillment of the requirements of a grant application. In each case the Employer shall give prior written notice to the Local of the existence of such a copy, the specific contents thereof, and the grant-making organization to which it is being submitted;

9

Under no circumstances shall the tapes be used in connection with any dismissal or other disciplinary procedures

This SIDE LETTER shall expire with the collective bargaining agreement.

THIS AGREEMENT executed by the duly authorized agents of the parties this       day of May, 2009.

PERFORMING ARTS CENTER OF LOS ANGELES COUNTY                    PROFESSIONAL MUSICIANS, Local 47, AFM


_____              _____
BY RENAE WILLIAMS NILES,                      BY VINCE TROMBETTA, President
Director of Dance
Presentations

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge David O. Carter and the assigned discovery Magistrate Judge is Arthur Nakazato.

The case number on all documents filed with the Court should read as follows:

## SACV12- 960 DOC (ANx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

===============================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[ ] **Western Division**
312 N. Spring St., Rm. G-8
Los Angeles, CA 90012

[X] **Southern Division**
411 West Fourth St., Rm. 1-053
Santa Ana, CA 92701-4516

[ ] **Eastern Division**
3470 Twelfth St., Rm. 134
Riverside, CA 92501

Failure to file at the proper location will result in your documents being returned to you.

Name & Address: See Attachment 1 to Summons

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN DAVIS, PHILIP EVANS AND MINDY BALL, on behalf of themselves and all others similarly situated<br><br>PLAINTIFF(S)<br><br>v.<br><br>Professional Musicians Local 47; American Federation Of Musicians Of The United States And Canada; and Performing Arts Center Of Los Angeles County<br><br>DEFENDANT(S). | CASE NUMBER<br><br>SACV12   960 DOC (ANx)<br><br><br>SUMMONS |

TO:    DEFENDANT(S):

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, _Christopher W. Katzenbach_____, whose address is _Katzenbach Law Offices, 1714 Stockton Street, Suite 300 San Francisco, CA 94133-2930_. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

JUN 1 4 2012                    Clerk, U.S. District Court

Dated: _____        By: _____
                                          Deputy Clerk

                                       *(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

Attachment 1

Names and addresses of Defendants:

1.  PROFESSIONAL MUSICIANS LOCAL 47
    817 Vine Street
    Los Angeles, CA 90038

2.  AMERICAN FEDERATION OF MUSICIANS OF THE UNITED STATES
    AND CANADA
    Dick Gabriel
    3550 Wilshire Blvd. Ste. 1900
    Los Angeles, CA 90010

3.  PERFORMING ARTS CENTER OF LOS ANGELES COUNTY
    Stephen G. Contopulos
    555 W. Fifth St. 4000
    Los Angeles, CA 90013

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
JONATHAN DAVIS, PHILIP EVANS AND MINDY BALL, on behalf of themselves and all others similarly situated

**DEFENDANTS**
PROFESSIONAL MUSICIANS LOCAL 47; AMERICAN FEDERATION OF MUSICIANS OF THE UNITED STATES AND CANADA; and PERFORMING ARTS CENTER OF LOS ANGELES COUNTY

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
CHRISTOPHER W. KATZENBACH (SBN 108006)
KATZENBACH LAW OFFICES, 1714 STOCKTON STREET, SUITE 300
SAN FRANCISCO, CA 94133-2930; (415) 834-1778

Attorneys (If Known)

**BY FAX**

**II. BASIS OF JURISDICTION** (Place an X in one box only.)
☐ 1 U.S. Government Plaintiff   ☒ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐1 | ☐1 | Incorporated or Principal Place of Business in this State | ☐4 | ☐4 |
| Citizen of Another State | ☐2 | ☐2 | Incorporated and Principal Place of Business in Another State | ☐5 | ☐5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

**IV. ORIGIN** (Place an X in one box only.)
☒1 Original Proceeding   ☐2 Removed from State Court   ☐3 Remanded from Appellate Court   ☐4 Reinstated or Reopened   ☐5 Transferred from another district (specify):   ☐6 Multi-District Litigation   ☐7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)
**CLASS ACTION under F.R.C.P. 23:** ☒ Yes  ☐ No   ☒ MONEY DEMANDED IN COMPLAINT: $ According to proof

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Breach of duty of fair representation; violations of LMRDA 29 U.S.C. §§ 411(a)(1), (a)(2) & (a)(4); violations of contracts between labor organizations (29 U.S.C § 185(a))

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS — PERSONAL INJURY | TORTS — PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐400 State Reapportionment | ☐110 Insurance | ☐310 Airplane | ☐370 Other Fraud | ☐510 Motions to Vacate Sentence Habeas Corpus | ☐710 Fair Labor Standards Act |
| ☐410 Antitrust | ☐120 Marine | ☐315 Airplane Product Liability | ☐371 Truth in Lending | ☐530 General | ☒720 Labor/Mgmt. Relations |
| ☐430 Banks and Banking | ☐130 Miller Act | ☐320 Assault, Libel & Slander | ☐380 Other Personal Property Damage | ☐535 Death Penalty | ☐730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐450 Commerce/ICC Rates/etc. | ☐140 Negotiable Instrument | ☐330 Fed. Employers' Liability | ☐385 Property Damage Product Liability | ☐540 Mandamus/ Other | ☐740 Railway Labor Act |
| ☐460 Deportation | ☐150 Recovery of Overpayment & Enforcement of Judgment | ☐340 Marine | **BANKRUPTCY** | ☐550 Civil Rights | ☐790 Other Labor Litigation |
| ☐470 Racketeer Influenced and Corrupt Organizations | ☐151 Medicare Act | ☐345 Marine Product Liability | ☐422 Appeal 28 USC 158 | ☐555 Prison Condition | ☐791 Empl. Ret. Inc. Security Act |
| ☐480 Consumer Credit | ☐152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐350 Motor Vehicle | ☐423 Withdrawal 28 USC 157 | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐490 Cable/Sat TV | | ☐355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐610 Agriculture | ☐820 Copyrights |
| ☐810 Selective Service | ☐153 Recovery of Overpayment of Veteran's Benefits | ☐360 Other Personal Injury | ☐441 Voting | ☐620 Other Food & Drug | ☐830 Patent |
| ☐850 Securities/Commodities/ Exchange | ☐160 Stockholders' Suits | ☐362 Personal Injury- Med Malpractice | ☐442 Employment | ☐625 Drug Related Seizure of Property 21 USC 881 | ☐840 Trademark |
| ☐875 Customer Challenge 12 USC 3410 | ☐190 Other Contract | ☐365 Personal Injury- Product Liability | ☐443 Housing/Acco- mmodations | | **SOCIAL SECURITY** |
| ☐890 Other Statutory Actions | ☐195 Contract Product Liability | ☐368 Asbestos Personal Injury Product Liability | ☐444 Welfare | ☐630 Liquor Laws | ☐861 HIA (1395ff) |
| ☐891 Agricultural Act | ☐196 Franchise | | ☐445 American with Disabilities - Employment | ☐640 R.R. & Truck | ☐862 Black Lung (923) |
| ☐892 Economic Stabilization Act | **REAL PROPERTY** | **IMMIGRATION** | ☐446 American with Disabilities - Other | ☐650 Airline Regs | ☐863 DIWC/DIWW (405(g)) |
| ☐893 Environmental Matters | ☐210 Land Condemnation | ☐462 Naturalization Application | ☐440 Other Civil Rights | ☐660 Occupational Safety /Health | ☐864 SSID Title XVI |
| ☐894 Energy Allocation Act | ☐220 Foreclosure | ☐463 Habeas Corpus- Alien Detainee | | ☐690 Other | ☐865 RSI (405(g)) |
| ☐895 Freedom of Info. Act | ☐230 Rent Lease & Ejectment | ☐465 Other Immigration Actions | | | **FEDERAL TAX SUITS** |
| ☐900 Appeal of Fee Determi- nation Under Equal Access to Justice | ☐240 Torts to Land | | | | ☐870 Taxes (U.S. Plaintiff or Defendant) |
| ☐950 Constitutionality of State Statutes | ☐245 Tort Product Liability | | | | ☐871 IRS-Third Party 26 USC 7609 |
| | ☐290 All Other Real Property | | | | |

SACV12 960

**FOR OFFICE USE ONLY:**   Case Number: _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08)                CIVIL COVER SHEET                Page 1 of 2

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?  ☑ No  ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?  ☑ No  ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, <u>and</u> one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐  Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County (Plaintiffs Philip Evans and Jonathan Davis); Orange County (Plaintiff Mindy Ball) | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐  Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County (Defendants Professional Musicians Local 47 and Performing Arts Center Of Los Angeles County) | New York (Defendant American Federation Of Musicians Of The United States And Canada) |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
    Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved.

X.  SIGNATURE OF ATTORNEY (OR PRO PER):  _____  Date  6/13/2012

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |